**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

In Re: D.A.-1 & D.A.-2

**FILED**

October 21, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 13-0423** (Raleigh County 10-JA-138 & 139)

**MEMORANDUM DECISION**

Petitioner Father, by counsel Timothy P. Lupardus, appeals the Circuit Court of Raleigh County's order entered on March 28, 2013, terminating his parental rights to his children, D.A.-1 and D.A.-2. [1] The West Virginia Department of Health and Human Resources ("DHHR"), by Angela Alexander Walters, its attorney, filed its response. The guardian ad litem, Mary Beth Chapman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him an abusing parent, in terminating his parental rights to the children, and in not mandating visitation in the event the children are adopted.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed the underlying abuse and neglect petition in April of 2011 by amending a previously filed petition to include Petitioner Father. The prior petition was brought by petitioner and the DHHR against the children's mother. The amended petition alleged that Petitioner Father stated that he could not "handle these kids by [himself]," and that he excessively punished D.A.-1, then six years old, by locking her in her room for seven hours and whipping her with a belt. Petitioner waived a preliminary hearing, and the circuit court ordered the children into the legal and physical custody of the DHHR. At the adjudicatory hearing on August 23, 2012, petitioner admitted to leaving D.A.-1 in the room, but stated that he only sent her to her room for two hours. A child protective services ("CPS") worker testified that an appropriate amount of time for "time out" would have been six minutes, based upon D.A.-1's age. The circuit court found the confinement and punishment using the belt to be abuse of the child. The CPS worker further testified that petitioner has mental capacity issues. The circuit

---

[1]Because this matter concerns infant children, we follow our traditional practice in cases involving sensitive facts and use only the parties' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990). Because both the children have the initials D.A., we have identified those children by placing a number after their initials. We also note that the circuit court case numbers listed above correspond with each child in the style of this case.

court granted petitioner an improvement period, but made no finding regarding petitioner's capacity, stating that the improvement period would help the court assess his capacity. By order entered March 28, 2013, following a dispositional hearing, the circuit court terminated petitioner's parental rights. At the dispositional hearing, Leonard Andrew Steward, Ph.D., testified that petitioner is moderately mentally retarded and did not have the intellectual capacity to parent the children. The circuit court found that petitioner's mental incapacity was the basis for the termination, not his intentional conduct.[2] In light of the basis for petitioner's termination, the circuit court ordered visitation until permanency has been achieved by adoption or guardianship. The circuit court found that visitation is not contrary to the best interest of the children, even if adoption should occur. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.* 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the basis for finding abuse and neglect for using a belt and sending D.A.-1 to her room for several hours was in error. Petitioner asserts that the circuit court found that using a belt is *per se* evidence of abuse and that the findings regarding the use of the belt and sending the child to her room were insufficiently supported by evidence. The testimony by CPS staff who spoke to D.A.-1 regarding the punishments at issue was unrefuted in the adjudicatory hearing. Additionally, the circuit court considered the evidence in the context of D.A.-1 being six years old and found that, due to the child's age, it was abusive to use a belt and he sent her to her room for two hours or more. Petitioner further argues that he corrected the issues leading to his being adjudicated an abusive parent and, therefore, it was error to terminate his parental rights based on his mental incapacity, which he asserts was not part of the original petition. However, contrary to petitioner's argument, the original petition alleged that he told a service provider that "I cannot handle these kids by myself. I need some help."

With regard to a parent's mental incapacity, this Court has provided guidance as follows:

---

[2] At the dispositional hearing, Jennifer Price, Psy.D., testified that petitioner would have great difficulty living independently, even without children, and that it would be exceptionally difficult for him to raise two special needs children.

2

Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

Syl. pt. 4, *In re Billy Joe M.*, 206 W. Va. 1, 521 S.E.2d 173 (1999).

This Court finds that the circuit court was presented with sufficient evidence for a finding that the reasonable means available to the DHHR would not accomplish reunification with petitioner and his children. A review of the record reveals there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, due to petitioner's mental incapacity. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. This Court finds no error in the termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred by determining it did not have authority to mandate post-permanency visitation. The circuit court, however, did not address its authority in the termination order, but rather found that it was not in the interest of the children to mandate post-permanency visitation for each of the children due in large part to their young age. The court did find that post-termination visitation was appropriate. We have held as follows:

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 8, *In re Isaiah A.*, 228 W.Va. 176, 718 S.E.2d 775 (2010). Here, the circuit court did not find it was in the interest of the children to mandate visitation after permanency. The circuit court found that it was in the best interest of the child for the adopting court to address post-permanency visitation when considering adoption, but that at this time it was not against the best interest of the children to continue visitation, even after adoption. This Court finds that the circuit court correctly refused to mandate visitation with the children after adoption in order to avoid interfering with their permanent placement.

This Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

3

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under *W.Va. Code* § 49-6-5(a)(6) [1996], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.,* 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court and the termination of parental rights is hereby affirmed.

Affirmed.

**ISSUED**: October 21, 2013

**CONCURRED IN BY**:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II