# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* L.C.

No. 19-1184 (Monongalia County 17-JA-73)

**FILED**

**October 9, 2020**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In this child abuse and neglect proceeding, Petitioner Mother, A.T., appeals the Circuit Court of Monongalia County's November 20, 2019 order terminating her parental rights to her son, L.C.[1] Petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative, among other things.

This Court has considered the parties' briefs, oral arguments, and the record on appeal.[2] We find no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. We conclude that the circuit court did not err because Petitioner failed to correct her substance abuse and lack of suitable housing, even when afforded extended opportunities to do so.

### I. Factual and Procedural History

In June 2017, the DHHR filed a child abuse and neglect petition alleging that Petitioner exposed her child to domestic violence and substance abuse, and that her home was filthy. The DHHR reported that Petitioner consistently tested positive for cocaine after services were instituted in April 2017.

By written stipulation, Petitioner admitted that she abused her child (who was then four years old) because of her substance abuse, which affected her ability to properly parent, and that the condition of her home was inappropriate. In September 2017, the circuit court accepted the stipulation, adjudicated Petitioner as an abusing parent, and granted her a post-adjudicatory improvement period. Petitioner was required to attend and fully participate in multidisciplinary team (MDT) meetings, assist in the development of a case plan, submit to random drug screening, undergo a psychological evaluation with a substance abuse assessment to address

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015).

[2] Petitioner is represented by counsel Amanda J. Ray. The West Virginia Department of Health and Human Resources (DHHR), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem (GAL), Scott A. Shough, filed a response on behalf of the child, also in support of the circuit court's order.

1

recommendations to treat and manage her mental health issues, participate in parenting and adult life skills services, and maintain suitable and stable housing. The circuit court later extended Petitioner's post-adjudicatory improvement period.

Following two foster care placements, the child was admitted to Highland Hospital in December 2017 for evaluation and treatment for inappropriate sexual behaviors, aggression and suicidal/homicidal thinking. He was diagnosed with post-traumatic stress disorder and attention-deficit/hyperactivity disorder. The child reported that he was sexually abused by his father and while in a foster placement. In June 2018, the child was released from Highland. The DHHR agreed with the hospital's recommendation to place the child in Petitioner's custody so long as she continued with his therapy, her own substance abuse treatment, and remained compliant with the terms of her improvement period.

At a status hearing held in July 2018, the DHHR raised concerns that the child was missing therapy sessions and Petitioner was not participating with drug screening consistently. Petitioner had missed five drug screens and was on probation from her drug treatment program at Chestnut Ridge Hospital because of positive drug screens. Petitioner had also tested positive for cocaine on May 29, 2018, and positive for methamphetamines on June 27, 2018. The GAL stated that he visited Petitioner's home after the child was released from the hospital; while he believed the child was receiving appropriate care, he also had concerns about Petitioner's positive drug screens. Nevertheless, the GAL believed that it would be a "step backwards" to remove the child and place him in a strange environment. The GAL stated that despite Petitioner's "stumbles," she was still in the drug treatment program and he believed it would be in the child's best interest to stay with Petitioner, "at least now[.]" The circuit court ruled that the child would remain in Petitioner's custody.

The dispositional hearing set for August 2018 was continued at the request of the DHHR due to a family emergency involving the Child Protective Services (CPS) worker. At the continued hearing held September 11, 2018, the DHHR recommended that the child be removed from Petitioner's custody because of his escalating behavioral problems during the first three weeks of school. The DHHR presented testimony from Jennifer Cox, principal of the school, who stated that the child was in "crisis mode" nearly every day. Ms. Cox stated that he hit other students, threw things from shelves, spit on children, and would scream, curse, and undress at school. Danielle Lindsay with the Monongalia County Child Advocacy Center (CAC) testified and expressed concerns that the child was not receiving his medications based on his behaviors; a July 31, 2018 drug screen confirmed there was no evidence of his prescription medications. Ms. Lindsay testified that Dr. Capage, a psychologist with CAC, recommended that he be removed from Petitioner's care due to these escalating behaviors. The circuit court ruled that the DHHR could transfer temporary custody of the child from Petitioner so that he could be evaluated further. The parties agreed that the child would be treated at the United Summit Center before this change in placement occurred.

Petitioner filed a Motion for Relief seeking a hearing to address the recommendations from the United Summit Center and the opportunity to call witnesses in support of her motion for a post-dispositional improvement period. The circuit court denied her request for an additional hearing and granted her request for a post-dispositional improvement period.

Following his ten-day outpatient treatment program with the United Summit Center, the child was transferred from Petitioner's custody to a foster home on September 21, 2018. He continued to display serious behavioral issues that resulted in another stay at Highland Hospital. In December 2018, he was enrolled in Mountain Youth Academy, a facility in Tennessee, to receive intensive in-patient treatment. After over one year of treatment there, he was discharged from Mountain Youth Academy in January 2020.

Meanwhile, the next hearing was held in August 2019, nearly a year after the continued dispositional hearing. The parties discussed Petitioner's declining compliance with services. Beginning in February 2019, Petitioner missed numerous drug screens, and her attendance at MDT meetings had been sporadic. Felicia Bacorn with the DHHR testified that she visited the child multiple times at Mountain Youth Academy and that he was doing remarkably well with treatment. Ms. Bacorn stated that "it breaks my heart" that Petitioner had not kept in regular contact with the child. She stated that "these parents have regressed to the point that they don't care . . . . they have just put him to the side. It's like out of sight, out of mind." Petitioner made a motion to extend her post-dispositional improvement period. The GAL opposed the motion, citing Petitioner's poor cooperation with the DHHR and positive drug screens. The circuit court denied Petitioner's motion and set the matter for disposition.

The circuit court held a dispositional hearing in September 2019, which was continued to accommodate witnesses. The DHHR filed its family case plan prior to disposition.[3] Petitioner filed an objection to the eighteen-page family case plan as she believed it failed to include certain details. But Petitioner acknowledged "that due to a number of factors, she does not currently have a safe and stable home for the minor child to return to[.]" Petitioner requested that the circuit court approve funds for an expert witness to review the file, evaluate the child, and address the issue of his best interest moving toward permanent placement, and possible post-termination visitation. The circuit court did not rule on Petitioner's motion for an expert witness, noting that it may have been premature.

In November 2019, the circuit court held a dispositional hearing over the course of two days. Petitioner tested positive for methamphetamine and buprenorphine (for which she did not have a prescription) immediately before the hearing. The child's therapist from Mountain Youth Academy, Jolene Reed, testified that Petitioner visited the child only twice while he was at the facility and established telephone contact with him less than ten times, even though Petitioner could have called him every day. Ms. Reed testified that the child no longer had a strong emotional bond with Petitioner and that "the last time that he spoke with [Petitioner], he was very disinterested in speaking with her." Ms. Reed stated that Petitioner would not be an appropriate placement for the child. Ms. Bacorn, CPS worker, testified that he had made remarkable progress over the last year and noted that in that time he had very limited contact with Petitioner. Ms. Bacorn stated that Petitioner relapsed in 2019 and had not been participating with drug screening like she had or maintaining regular contact with the service providers since April 2019. Ms. Bacorn recommended that Petitioner's parental rights be terminated; she noted that the child was removed from Petitioner's home in June 2017 and he had been in foster care or placement for twenty-five of the last twenty-eight months. Petitioner testified that throughout 2019 she had

---

[3] *See* W. Va. Code § 49-4-408(a).

problems with transportation and her telephone; Petitioner also stated that she had changed addresses frequently.

Ultimately, the circuit court concluded that Petitioner failed to remedy the conditions of abuse and neglect, there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and that it was in the best interest of the child to terminate Petitioner's parental rights.[4]

## II.  Standard of Review

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).[5]

## III.  Discussion

On appeal, Petitioner raises several assignments of error.  Petitioner argues that the circuit court erred in terminating her parental rights when she had shown that she could remedy the conditions of abuse and neglect, including cleaning up her home and remaining drug free for at least two extended periods of time.  She contends a less-restrictive dispositional alternative was appropriate since the child remained in a facility with no foster home in place at the time of disposition.[6]  Petitioner urges this Court to regard her earlier "improvement" as more indicative of her potential parenting abilities than the behaviors she demonstrated throughout 2019.

---

[4] The child's father's parental rights were also terminated during the proceedings below. The DHHR is seeking an appropriate foster-to-adopt placement for the child.

[5] Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

[6] *See* W. Va. Code § 49-4-604(b)(5) ("[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.").

We begin by reiterating our holding that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).[7]

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes one in which the parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Despite positive drug screens and sporadic attendance at MDT meetings and adult life skills classes, Petitioner was granted not only a post-adjudicatory improvement period but also an extension of that improvement period. And Petitioner was granted a post-dispositional improvement period. While Petitioner initially complied with services and made progress in 2018, she eventually ceased regular drug screening and regular contact with the DHHR in 2019. Her compliance with the terms of her improvement plan throughout 2019 was abysmal. Petitioner tested positive for methamphetamines at the dispositional hearing and lacked suitable housing for the child at that time. Given this evidence, we agree with the circuit court's findings that there was no reasonable likelihood that Petitioner could correct the conditions of abuse or neglect in the near future and that termination of her parental rights was necessary for the child's welfare. Courts "are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]'"[8]

---

[7] Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

[8] Syl. Pt. 7, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991); *see also In re Isaiah A.*, 228 W. Va. 176, 185, 718 S.E.2d 775, 784 (2010) (finding "glimmer of hope" standard inconsistent with the criteria expressly provided by statute).

5

We further note that a parent's rights are "necessarily limited" as to improvement periods "because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto."[9] And, we have recognized that

> the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.[10]

Petitioner argues that the circuit court failed to even consider delaying the final hearing until the child was released from Mountain Youth Academy so that she could have the opportunity to display the ability to take proper care of him. But she cites no authority for the proposition that improvement periods should be extended well beyond statutory timeframes simply because a child is receiving in-patient treatment. The proceedings below were protracted, lasting over two years, and Petitioner failed to demonstrate that she could correct the conditions of abuse of neglect. So, we decline to find that the circuit court erred.[11]

Petitioner also contends that the circuit court erred by not ensuring the DHHR filed a child and/or family case plan in a timely manner at the onset of these proceedings as required by the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings (Rules). But Petitioner is not entitled to this relief when she did not complain about the lack of a formal case plan in 2018 and can show no prejudice. Petitioner was clearly aware of the terms of her improvement period set forth in the initial dispositional order entered in September 2017. In fact, Petitioner recounts the positive steps she made in 2018. Petitioner also complains that the circuit court erred by not ensuring that the DHHR was providing services as she saw fit such as assisting her with transportation/communication when the child was in Tennessee. But Petitioner's complaints ring hollow because she did not maintain regular contact with the DHHR during that time.

---

[9] *In re J. G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018) (quoting *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000)).

[10] *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996).

[11] Because we affirm the circuit court's disposition order, we find no merit to Petitioner's assignment of error alleging that it erred by failing to hold a hearing to address her objections to the family case plan. With regard to any procedural errors that occurred in these proceedings, we find that none were to the degree that substantially frustrated the overall proceedings to warrant reversal. *See In re Edward B.*, 210 W.Va. 621, 634, 558 S.E.2d 620, 633 (2001).

In her remaining assignments of error, Petitioner criticizes the circuit court's management of the case, the GAL's representation of the child, and the DHHR's services.[12] Petitioner reaches back to events that transpired a year before the final disposition hearing and argues that the circuit court erred by allowing the removal of the child from her home following the September 11, 2018 hearing. Petitioner states that the hearing was a "two hour long parade of witnesses from the State who advocated removal, after which the [c]ourt agreed with the removal without allowing [Petitioner] to object, present witnesses, or set forth any defense[.]" The record does not support these serious allegations. Petitioner was afforded procedural due process at this hearing; she heard the evidence presented against her and her counsel conducted thorough cross-examination of all witnesses. Petitioner neither offered evidence on her behalf nor objected to the circuit court's ruling. Because Petitioner did not preserve the issue she raises now, there is no accompanying ruling by the circuit court for our review. As this Court previously has explained:

> [t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. The forfeiture rule . . . fosters worthwhile systemic ends and courts will be the losers if we permit the rule to be easily evaded. It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.[13]

We also reject Petitioner's related argument that the circuit court erred in allowing the DHHR to remove the child from her care on September 21, 2018, without complying with the procedural requirements of West Virginia Code § 49-4-602.[14] As explained above, there was a

---

[12] Petitioner does not assign as error the circuit court's decision to deny her post-termination visitation. We therefore find no merit to her assignment of error alleging that it erred by not addressing her motion to approve fees for an expert witness to offer an opinion on that issue.

[13] *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 216, 470 S.E.2d 162, 170 (1996) (citation omitted).

[14] West Virginia Code § 49-4-602 provides:

(c) *Emergency removal by department during pendency of case.* -- Regardless of whether the court has previously granted the department care and custody of a child, if the department takes physical custody of a child during the pendency of a child abuse and neglect case (also known as removing the child) due to a change in circumstances and *without a court order issued at the time of the removal*, the department must immediately notify the court and a hearing shall take place within ten days to determine if there is imminent danger to the physical well-being of the child, and there is no reasonably available alternative to removal of the child. The court findings and order shall be consistent with subsections (a) and (b) of this section.

court order issued at the time of the removal, as it ruled from the bench at the September 11, 2018 hearing.

Petitioner also argues that the GAL's performance was inadequate, his disposition report lacked sufficient detail, and he failed to ascertain the child's wishes. We note that the GAL recommended that the child remain in Petitioner's care in July 2018 (after he was placed there following his discharge from Highland Hospital) even though Petitioner had some positive drug screens during that time. The GAL stated that he did not want to introduce further interruptions to the child considering the child was close to Petitioner at that time. But Petitioner's meager participation with services and lack of improvement throughout 2019 supported the GAL's ultimate recommendation that Petitioner's parental rights should be terminated. By that time, the child did not express a wish to maintain contact with Petitioner. To the contrary, his therapist testified that he had basically given up on trying to contact Petitioner and they no longer had a strong emotional bond. The record does not support Petitioner's claim that the GAL's representation of the child was deficient.

Having fully considered the issues before us, we remind the circuit court of its duty to conduct permanency reviews until the child has a permanent placement.[15] As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[ ] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.[16]

Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019) ], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.[17]

---

(Emphasis added).

[15] *See* Rule 39(b) ("At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.").

[16] *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6.

[17] Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998).

Finally, we remind the GAL that his role in this abuse and neglect proceeding will not cease until the child is in his permanent placement.[18]

For the above reasons, we affirm the circuit court's November 20, 2019, order.

Affirmed.

**ISSUED:** October 9, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[18] Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).