718 S.E.2d 775

**In re ISAIAH A.**

No. 35031.

Supreme Court of Appeals of
West Virginia.

Submitted March 30, 2010.

Decided April 15, 2010.

178

Timothy P. Lupardus, Guardian ad Litem, Pineville, WV, for Appellant.

Thomas H. Evans, III, Oceana, WV, for Appellee, Alicia T.

Angela A. Walters, Attorney General's Office, Princeton, WV, for Appellee, WV DHHR.

PER CURIAM:

This is an appeal by Timothy Lupardus, guardian ad litem, and the Department of Health and Human Resources (hereinafter "Appellants") from an order of the Circuit Court of Wyoming County declining to terminate the parental rights of Alicia T. (hereinafter "mother") to her son, Isaiah A.[1] The Appellants contend that the lower court erred in refusing to terminate the mother's parental rights and failed to correctly apply the applicable statutory standard for a determination regarding termination of parental rights. Based on the arguments of the parties, the record as provided to this Court, and the pertinent authorities, we reverse the ruling of the lower court and remand with

---

1. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dept. of Human Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

directions to enter an order terminating the parental rights of Alicia T. to Isaiah A.

## I. Factual and Procedural History

An Abuse and Neglect Petition was filed on September 14, 2006, concerning eleven-month-old Isaiah A.[2] The evidence submitted in support of the Petition indicated that Isaiah's mother was bipolar and had consistently refused medication. She had also extensively used illegal drugs and tested positive for barbiturates, oxyzapan, PCP, and cocaine. She had demonstrated difficulty maintaining emotional control, and Isaiah had been discovered amid a variety of pills on the floor after the mother had taken an accidental overdose. The mother had also been uncooperative with DHHR attempts to provide remedial services.[3]

A preliminary hearing was held on October 2, 2006, and the lower court granted the mother a ninety-day pre-adjudicatory improvement period by order entered December 20, 2006. Evidence presented at that juncture further indicated that the mother had been charged with several crimes, including petit larceny, disorderly conduct, obstructing a police officer, and entering without breaking. She had also tried to remove Isaiah from the home of a relative with whom he had been placed.

**2.** Isaiah, born on September 23, 2005, was eleven months old at the time the Petition was filed and is now four and one-half years old. The lower court's dispositional order indicated that Isaiah's biological father, Charles A., is deceased.

**3.** The lower court's dispositional order provided a chronology of the events leading to the Abuse and Neglect Petition, including the fact that Isaiah had been taken from the mother's custody in January 2006, at the age of four months, due to the mother's admitted ingestion of cocaine and PCP during a Super Bowl party. Isaiah was returned to the mother's custody after she was able to pass a drug test in February 2006. The mother agreed to the provision of in-home services offered at that time. She was not, however, willing to enter a drug treatment program.

**4.** To assist the reader in processing the events occurring within the twenty-six months between the filing of the Abuse and Neglect Petition and the final order currently on appeal, the following chronology is provided:

September 14, 2006 — Abuse and Neglect Petition filed

An adjudicatory hearing was conducted on March 15, 2007, and the mother stipulated that Isaiah had indeed been abused and/or neglected. The lower court granted a ninety-day post-adjudicatory improvement period by order entered April 3, 2007,[4] and stated that a dispositional hearing would be conducted on July 12, 2007.[5]

On May 3, 2007, the mother executed a document purporting to transfer custody of Isaiah to the DHHR for the purpose of being placed for adoption. She later maintained that she did not knowingly and intentionally relinquish her rights to Isaiah. Although the mother refused to submit to many of the required drug tests, she did test positive for morphine, benzodiazepines, hydrocodone, oxycodone, oxazepam, and marijuana during drug screenings. The DHHR filed a Petition for Termination of Parental Rights on August 15, 2007.

By order entered October 31, 2007, the first ninety-day extension of the improvement period was granted by the lower court, and the lower court specified that a disposition hearing would be conducted on January 10, 2008. A January 7, 2008, status report submitted to the lower court by DHHR indicated very poor progress on the conditions of the extended improvement period. The mother had failed to cooperate with the in-

| | |
|---|---|
| December 20, 2006 | Pre-adjudicatory Improvement Period granted |
| April 3, 2007 | Post-adjudicatory Improvement Period granted |
| August 15, 2007 | DHHR filed first Petition for Termination of Parental Rights |
| October 31, 2007 | First Extension of Improvement Period granted. |
| January 28, 2008 | Second Extension of Improvement Period granted |
| May 5, 2008 | Third Extension of Improvement Period granted |
| July 18, 2008 | DHHR filed second Petition for Termination of Parental Rights |
| December 29, 2008 | Final Order Denying Termination of Parental Rights |

**5.** The mother's older child, Madison, had been removed from the home due to the mother's drug usage, domestic violence, and neglect. The mother's parental rights to Madison were terminated on March 9, 2007, and Madison was adopted by relatives.

home services provider[6] and had failed to appear for required drug screenings, despite the offered incentive of being permitted to visit Isaiah if she had three consecutive negative drug screenings. The mother also continued to date a convicted felon, Wendell T.,[7] and departed from a scheduled visit with Isaiah early because Wendell T. had not been permitted to accompany her on the visit. The DHHR reported that "it appeared that [mother] was focused more on Wendell not being in the visit then [sic] visiting with her son."

A second ninety-day extension of the mother's improvement period was granted by order entered January 28, 2008, and the court stated that a dispositional hearing would be conducted on April 10, 2008. The mother thereafter began having weekend visits with Isaiah, but these were discontinued based upon her refusal to appear for drug testing and her failure to cooperate with her in-home service providers. The DHHR submitted a status report dated April 4, 2008, and reported that the mother had become angry when she learned that she needed to appear for drug testing. She had initially agreed to the testing but subsequently refused to attend when a DHHR worker arrived to transport her to the testing location. She later tested positive for Oxymorphine, and her visitation thereafter became supervised.[8]

On April 10, 2008, the mother requested another extension of her post-adjudicatory improvement period. By order entered May 5, 2008, the lower court granted a third ninety-day extension of the improvement period and specified that a dispositional hearing would be conducted on July 10, 2008. The mother again refused a drug screening on May 28, 2008, and also informed Isaiah's foster mother that she was not going to visit Isaiah anymore. On July 14, 2008, the DHHR formally discontinued visits between the mother and Isaiah. She had not visited

Isaiah for three months and had been in several recent fights. The mother actually missed fifteen of twenty-eight scheduled visits with Isaiah and refused scheduled parenting instruction based upon her claim that she was already an excellent mother and did not need the services.

Another Petition for Termination of Parental Rights was filed by the DHHR on July 18, 2008. In this petition, the DHHR emphasized that Isaiah had been in custody since October 2006, a period of twenty-one months, and had not been returned to his parent or placed for adoption. A thorough chronology was presented in that petition, including the mother's extended pattern of drug abuse; the filth and cat urine odor of the home; the mother's termination of parental rights to Madison; the mother's verbal and physical aggression; her failure to submit to required drug screenings; her positive drug tests; the domestic violence between the mother and her boyfriend; and the various custody arrangements for Isaiah with different family members.

On September 30, 2008, the mother filed a motion for a post-dispositional improvement period, but Judge Hrko denied her motion, and the case proceeded to the dispositional stage. By order entered December 29, 2008, the lower court found that "although the Respondent has shown some signs of progress during her improvement periods, her improvement has been minimal and she has not corrected the conditions of abuse and/or neglect." The lower court also acknowledged that the mother had denied having a drug addiction problem and had refused an inpatient drug program. The mother was tested immediately after the hearing and tested positive for hydrocodone, oxycodone, oxazepam, and TCH.

---

6. One of the in-home service providers specifically stated that he could not continue to attempt to provide services to the mother due to her behaviors.

7. Wendell T. is now deceased.

8. The April 4, 2008, status report also indicated that Wendell T. had been removed from the home during a March 19, 2008, domestic dispute at the mother's residence. They were allegedly arguing over the fact that Wendell T. had learned that the mother had engaged in a sexual encounter with another man at a motel. On March 22, 2008, the mother and Wendell T. were arrested after an altercation at a local pool hall.

Although the lower court specifically found that "[r]eturn to Respondent's home remains contrary to the best interests of the Child," it declined to terminate the mother's parental rights to Isaiah. The lower court reasoned as follows:

> Although the Respondent has been afforded numerous improvement periods and has shown only minimal progress and has failed to remedy the conditions that required removal of the Child from her home, the Respondent nonetheless has not been shown to be so incorrigible as to leave this Court without the firm impression that the Respondent has the capacity to reform, should she so choose.

The lower court stated that "there is a glimmer of hope that the Respondent mother can make diligent efforts to remedy the conditions of abuse and neglect." Thus, the lower court ordered that Isaiah would remain in the custody of the relatives with whom he had been residing and allowed liberal supervised visitation with the mother. The lower court further ordered the guardian ad litem to "continue performing his duties until relieved thereof by further Order of this Court or as otherwise provided for by law." The court stated that if the relatives "cease to be a fit and willing placement," the DHHR should file a report thereof.

The guardian ad litem and DHHR now appeal. They contend that the best interests of Isaiah must guide this inquiry and that Isaiah deserves final and permanent placement in the form of adoption, as sought by the relatives with whom he has resided.

## II. Standard of Review

This Court explained in *In re Emily*, 208 W.Va. 325, 540 S.E.2d 542 (2000), that abuse and neglect proceedings will be evaluated under a "compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." 208 W.Va. at 332, 540 S.E.2d at 549. Syllabus point one of *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), also provides the following standard of review for cases of this nature:

> Although conclusions of law reached by a circuit court are subject to *de novo* re-

view, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Furthermore, syllabus point one of *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996), explains the general criterion for appeals from the circuit court level, as follows:

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

Utilizing these standards as guidance, we address the contentions of the parties in this matter.

## III. Discussion

The guardian ad litem and DHHR maintain that the lower court erroneously failed to terminate the mother's parental rights, based upon the evidence presented and the specific factual findings made by the lower court. Further, they contend that the trial court improperly utilized the statutory standards governing the decision regarding termination of parental rights. In response, the mother argues that her dependence upon drugs and the consequences of that addiction must be considered as mitigating factors. She essentially contends that she did not receive the level of assistance that would have been re-

quired to permit her to overcome her addiction and remedy her insufficiencies as a parent. She also alleges that she possesses the potential for improvement.

This Court has consistently articulated and adhered to the statutorily-mandated standard for the termination of parental rights. West Virginia Code § 49–6–5(a)(6) (2006) (Repl.Vol.2009) provides that parental rights may be terminated "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child. . . ." West Virginia Code § 49–6–5(b) supplies the definition of "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected," the complete text of which provides follows:

As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Such conditions shall be considered to exist in the following circumstances, which shall not be exclusive:

(1) The abusing parent or parents have *habitually abused or are addicted to alcohol, controlled substances or drugs,* to the extent that proper parenting skills have been *seriously impaired and such person or persons have not responded to or followed through* the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

(2) The abusing parent or parents have willfully *refused or are presently unwilling to cooperate* in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;

(3) The abusing parent or parents have *not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies* designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or in-

substantial diminution of conditions which threatened the health, welfare or life of the child;

(4) The abusing parent or parents have abandoned the child;

(5) The abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child;

(6) The abusing parent or parents have incurred emotional illness, mental illness or mental deficiency of such duration or nature as to render such parent or parents incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills; or

(7) The battered parent's parenting skills have been seriously impaired and said person has willfully refused or is presently unwilling or unable to cooperate in the development of a reasonable treatment plan or has not adequately responded to or followed through with the recommended and appropriate treatment plan.

West Virginia Code § 49–6–5(b) (emphasis supplied).

In determining the appropriate disposition of an abuse and neglect proceeding based upon the foregoing statutory guidance, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). This Court has invariably implemented the principle that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996).

Moreover, the precedent of this Court supports the proposition that children are entitled to permanency to the greatest degree possible. *See In re Jonathan G.,* 198

W.Va. 716, 482 S.E.2d 893 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996); *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995); *In re Lindsey C.*, 196 W.Va. 395, 473 S.E.2d 110 (1995) (Workman, J., dissenting). Consistent with that goal, this Court explained as follows in pertinent part of syllabus point one of *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991): "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security."

■ In constructing the optimal resolution of a particular abuse and neglect case, this Court has explained that " 'courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened....' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 7, in part, *Carlita B.*, 185 W.Va. at 616, 408 S.E.2d at 368. Indeed, termination of parental rights may be employed without intervening alternatives where there is no reasonable likelihood of correction of the conditions constituting abuse and neglect. Syllabus point one of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), explains this point succinctly, as follows:

> " 'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.' Syl-

labus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989)."

■ With regard to the time frame in which final disposition of abuse and neglect cases should be made, this Court has recognized that "[a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life...." *Amy M.*, 196 W.Va. at 260, 470 S.E.2d at 214. Indeed, improvement periods are "regulated, both in their allowance and in their duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally." *In re Emily*, 208 W.Va. at 334–35, 540 S.E.2d at 551–52.

West Virginia Code § 49–6–12(a) (1996) (Repl.Vol.2009) provides that a pre-adjudicatory improvement period "not to exceed three months" may be granted in cases of child neglect or abuse. Section (b) of that statute permits a post-adjudicatory improvement period "not to exceed six months" if, among other requirements, the respondent demonstrates by clear and convincing evidence that he or she is likely to "fully participate in the improvement period"[9] and if the respondent "demonstrates that since the initial improvement period, the respondent has experienced a substantial change in circumstances" which will permit the respondent to be "likely to fully participate in a further improvement period[.]" W.Va.Code § 49–6–12(b).

■ An extension of an improvement period, as granted thrice in the present case, is

9. The complete text of West Virginia Code § 49–6–12(b) provides as follows:

> After finding that a child is an abused or neglected child pursuant to section two of this article, a court may grant a respondent an improvement period of a period not to exceed six months when:
> (1) The respondent files a written motion requesting the improvement period;
> (2) The respondent demonstrates, by clear and convincing evidence, that the respon-

dent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period;
> (3) In the order granting the improvement period, the court (A) orders that a hearing be held to review the matter within sixty days of the granting of the improvement period, or (B) orders that a hearing be held to review the matter within ninety days of the granting of the improvement period and that the de-

permitted by West Virginia Code 49–6–12(g) for periods not to exceed three months under the following conditions:

when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.

See also Syl. Pt. 2, In re Jamie Nicole H., 205 W.Va. 176, 517 S.E.2d 41 (1999) ("Pursuant to West Virginia Code § 49–6–12(g) (1998), before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period would not substantially impair the ability of the Department of Health and Human Resources to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.").

· This Court has explained that "an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged." In re Emily, 208 W.Va. at 334, 540 S.E.2d at 551. Thus, in the recent case of In re Kaitlyn P., 225 W.Va. 123, 690 S.E.2d 131 (2010), this Court examined the evidence indicative of potential participation and found that the parents had failed to present adequate evidence that they were likely to fully participate in the improvement period, as required where a post-adjudicatory improvement period is requested.

In the present case, the lower court permitted the mother ample opportunity to avail herself of the services provided and to correct the conditions of abuse and/or neglect existing at the time the original petition was filed. The lower court provided the mother with a ninety-day pre-adjudicatory improvement period in December 2006, a ninety-day post-adjudicatory improvement period in April 2007, and three ninety-day extensions of the improvement periods in October 2007, January 2008, and May 2008. Thus, in the judgment of this Court, the lower court was far more lenient in the granting of extensions than was warranted by the circumstances existing in this case and the absence of improvement demonstrated by the mother. This mother was provided with abundant opportunity to rectify the conditions of abuse and neglect. She failed to do so, and yet the lower court continued to extend the improvement periods. As this Court observed in Amy M., "prohibition is available to abused and/or neglected children to restrain courts from granting improvement periods of a greater extent and duration than permitted" by statute. 196 W.Va. at 258, 470 S.E.2d at 212. While this Court has recognized that a lower court's discretion includes considerable flexibility in fashioning the appropriate relief in these cases, this Court has also declared that "there comes a time for decision." Id. at 260, 470 S.E.2d at 214.

When the lower court did eventually deny another request for an improvement period, it made factual findings in its final December 29, 2008, order and specifically stated that the mother had "shown only minimal progress and … failed to remedy the conditions that required removal" of Isaiah. In determining the ultimate disposition of this case, however, the lower court stated that it did "not find at this time that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the

partment submit a report as to the respondent's progress in the improvement period within sixty days of the order granting the improvement period;

(4) Since the initiation of the proceeding, the respondent has not previously been granted any improvement period or the respondent demonstrates that since the initial improvement period, the respondent has experienced a substantial change in circumstances. Further, the respondent shall demonstrate that due to that change in circumstances the respondent is likely to fully participate in a further improvement period; and

(5) The order granting the improvement period requires the department to prepare and submit to the court an individualized family case plan in accordance with the provisions of section three [49–6D–3], article six-d of this chapter.

near future." The lower court continued by stating that "there is a glimmer of hope that the Respondent mother can make diligent efforts to remedy the conditions of abuse and neglect."

■ We find no error in the lower court's factual findings. However, the lower court's application of law to the incontrovertible facts is erroneous, and its ultimate conclusion to allow Isaiah to remain in temporary foster care placement without termination of parental rights is an abuse of discretion. The determinative standard, as provided and defined by statute and quoted above, is whether there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." W.Va.Code § 49–6–5(a)(6). The lower court's utilization of a standard such as whether there is a "glimmer of hope" that the mother can make a diligent effort to remedy the situation is inconsistent with the criteria expressly provided by statute.

■ Applying the proper legal standard to the facts as determined by the lower court, this Court has evaluated the behavior of the mother over the twenty-six month period between the September 14, 2006, filing of the Abuse and Neglect Petition to the December 29, 2008, final order currently on appeal. We find that the facts as revealed in the record do not demonstrate any likelihood that the conditions of neglect or abuse can be substantially corrected in the near future. The lower court provided extensive opportunity for remediation of the existing deficits. Improvement periods were granted and extended, in-home assistance was provided, and the mother consistently failed to cooperate with the service providers and the conditions of the improvement periods. Based upon the factual record, the best interests of the child, and the child's right to eventual permanency, this Court reverses the lower court's conclu-

sion that the mother's parental rights should not be terminated.[10]

## IV. Conclusion

Accordingly, for the reasons set forth above, the order of the Circuit Court of Wyoming County is reversed to the extent that it failed to terminate the parental rights of Alicia T. to Isaiah A. This case is remanded to the lower court for entry of an order terminating the parental rights of Alicia T. to Isaiah A. The mandate of this Court shall issue contemporaneously herewith.

Reversed and remanded with directions.

---

10. This Court has previously explained the potential for post-termination visitation, as follows in syllabus point five of *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995):

When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional

bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Based upon this Court's review of this matter and the argument of the parties to this action, we find that an order addressing post-termination visitation is not warranted in this case.