IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 21-0266

_____

FILED
November 17, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
P.G.-1, P.G.-2, and K.G., JR.,
Petitioners

v.

THE HONORABLE RONALD E. WILSON,
JUDGE OF THE CIRCUIT COURT OF
HANCOCK COUNTY, A.G., and THE WEST
VIRGINIA DEPARTMENT OF HEALTH
AND HUMAN RESOURCES,
Respondents

_____

ORIGINAL PROCEEDINGS IN PROHIBITION

WRIT GRANTED

_____

Submitted: September 28, 2021
Filed: November 17, 2021

Amy Pigg Shafer, Esq.
Shafer Law Offices
Wheeling, West Virginia
Guardian *Ad Litem*

Christopher Alan Scheetz, Esq.
Follansbee, West Virginia
Counsel for Respondent A.G.

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Chaelyn W. Casteel, Esq.
Assistant Attorney General
Fairmont, West Virginia

Counsel for Respondent West Virginia
Department of Health and Human
Resources

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Prohibition is available to abused and/or neglected children to restrain courts from granting improvement periods of a greater extent and duration than permitted under [W. Va. Code §§ 49-4-601 *et seq.*]."  Syl. Pt. 2, in part, *State ex rel. S.W. v. Wilson*, 243 W. Va. 515, 845 S.E.2d 290 (2020).

2.      "'In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.'  Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996)."  Syl. Pt. 1, *State ex rel. S.W. v. Wilson*, 243 W. Va. 515, 845 S.E.2d 290 (2020).

i

3.     "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute."  Syl. Pt. 6, in part, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 671 S.E.2d 682 (2008).

4.     A circuit court may not grant a post-adjudicatory improvement period under W. Va. Code § 49-4-610(2) (eff. 2015) unless the respondent to the abuse and neglect petition files a written motion requesting the improvement period.

5.     West Virginia Code § 49-4-610(6) (eff. 2015) authorizes only *one* extension of a post-adjudicatory improvement period.

6.     West Virginia Code § 49-4-610(6) (eff. 2015) provides that when a circuit court extends a post-adjudicatory improvement period, the extension must be for a period that does not exceed three months.

7.     "Pursuant to West Virginia Code § 49-[4-610(6) (eff. 2015)], before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period would not substantially impair the ability of the Department of Health and Human Resources to permanently place the child; and that such extension is otherwise consistent with the best interest of the child."  Syl. Pt. 7, in part, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (per curiam).

ii

**Armstead, Justice:**

This original jurisdiction proceeding stems from an abuse and neglect petition filed in the Circuit Court of Hancock County. Petitioners are three boys, P.G.-1,[1] P.G.-2, and K.G., Jr. (the "G Children"), who, by their guardian *ad litem*, ask the Court to issue a writ prohibiting the circuit court from extending the improvement period of their mother, Respondent A.G. The G Children request, in particular, a writ that either (a) commands the circuit court to set their case for a dispositional hearing or (b) commands the circuit court to terminate A.G.'s parental rights.

Based on the record before us, the arguments of the parties, and the applicable law, we find that A.G.'s improvement period was improper from the beginning and that, even if A.G.'s improvement period had been proper, the circuit court committed clear error in extending her improvement period. Accordingly, we grant the writ of prohibition and remand this case to the circuit court for the limited purpose of holding an immediate evidentiary hearing and determining an appropriate disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.G. is the mother of eight children, three of whom—the G Children—are the subjects of this petition. She is married to the G Children's father, K.G. Her other children include H.W., J.W.-1, L.W., and J.W.-2 (the "W Children"), who live with their

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W. Va. R. App. P. 40(e); *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990). Additionally, because two of the G Children share the same initials, we will refer to them as P.G.-1 and P.G.-2, respectively, throughout this opinion.

father, J.W.-3.[2]  The eighth child, H.K.G., was born while this action was pending in circuit court.  Paternity testing revealed that J.W.-4 is her father.  The W Children and H.K.G. are not subjects of this petition.

In November 2018, Child Protective Services ("CPS") received a referral accusing K.G. of domestic violence.  The G Children were removed and placed in foster care.  In February 2019, DHHR filed an abuse and neglect petition.  The petition accused K.G. of domestic violence and abusing drugs and alcohol; it accused A. G. of participating in domestic violence with K.G. and failing to protect the children.[3]

A.G. signed a written post-adjudicatory improvement plan in May 2019.[4] Though the improvement plan was filed with the circuit court, there is no indication that A.G. ever filed a written motion seeking an improvement period.  Nevertheless, the improvement period plan provided for (a) drug screens, (b) a psychological evaluation (and compliance with recommendations), (c) a healthy relationships class (to address the domestic violence), (d) parent education classes, and (e) life skills classes.  The plan further required A.G. to (f) participate in supervised visits, (g) maintain suitable housing, (h)

---

[2] Because two of the W Children and their father share the same initials, we will refer to them as J.W.-1, J.W.-2, and J.W.-3, respectively, throughout this opinion. Because H.K.G.'s father also has the same initials, we will refer to him as J.W.-4.

[3] The petition also accused A.G. of selling "pills" with K.G. and alleged that A.G. had a "history of referrals" in Ohio for alcohol abuse and domestic violence.

[4] No adjudicatory order appears on the docket sheet or in the appendix record, but an October 2020 order states that A.G. was adjudicated based on her stipulated failure to protect the children from K.G.

2

maintain employment, (i) execute releases, (j) work with DHHR to establish medical insurance, (k) be honest with the multi-disciplinary team ("MDT"), (l) refrain from associating with drug or alcohol abusers, and (m) comply with all services.

In July 2019, A.G. submitted to a parental fitness examination. According to the psychologist's report, A.G. denied that there was "any" domestic violence in her home, and she professed not to know why CPS came to her house. According to her, the children "told too many stories[.]" The psychologist concluded that A.G.'s prognosis was "poor" and that she did not "have the intellectual capacity to care for her children." Indeed, the psychologist opined that her "intellectual disabilities"—which included an IQ of 45— were "not likely to improve." Nevertheless, the psychologist recommended that A.G. attend a domestic violence group and counseling to address her parenting deficiencies.

The guardian *ad litem* submitted an extensive report in January 2020. The report noted that the G Children were doing well and had "clearly bonded with their foster family." A.G., however, was not "making satisfactory progress" on her improvement plan. She remained unemployed and without housing of her own. Her service provider wished to terminate services due to her failure to communicate properly with the provider.

At a status hearing in February 2020, the guardian advised that A.G. had performed poorly from October to January but was doing better at attending life skills and parenting classes. However, the guardian also reported that the W Children had refused contact with A.G. after they observed K.G. leaving A.G.'s home. The guardian further noted that A.G. had not followed through on counseling and domestic violence group

3

attendance. The circuit court ordered A.G. to produce proof of attendance and to have no contact with K.G. Though the circuit court ordered that A.G. would "continue on her post-adjudicatory plan of improvement[,]" the court did not find that A.G. had substantially complied with her improvement period, or that compelling circumstances were present that rendered an extension in the children's best interests.

In March 2020, this Court entered the first of several administrative orders in response to the COVID-19 pandemic. The administrative orders substantially curtailed activity at the circuit court level.[5] These orders remained in effect until May 2020.[6]

The MDT convened remotely in May 2020. Notes from the meeting[7] indicate that A.G.'s progress was inconsistent. She reported that she would begin therapy in June. Though A.G. had experienced a lapse in parenting and life skills training due to the COVID-19 pandemic, those services were set to resume. A.G. had regularly visited the G Children by video conference. Unfortunately, the report also indicated K.G. had been arrested at A.G.'s residence on drug-related charges. Ultimately, the MDT reported a "lack of positive progress" on A.G.'s improvement plan.

---

[5] *See* Supreme Court of Appeals of West Virginia, Administrative Order (Mar. 16, 2020); Supreme Court of Appeals of West Virginia, Administrative Order (Mar. 22, 2020); Supreme Court of Appeals of West Virginia, Administrative Order (Apr. 3, 2020); Supreme Court of Appeals of West Virginia, Administrative Order (Apr. 22, 2020).

[6] Supreme Court of Appeals of West Virginia, Administrative Order (May 6, 2020) (authorizing in-person hearings to resume on May 18, 2020).

[7] By order of the Court, this report and others were made part of the appendix record in this matter, though they were not part of the record below.

The day after the MDT meeting, the guardian *ad litem* served a written motion to terminate A.G.'s improvement period. The motion cited A.G.'s failure to regularly attend parenting and life skills classes and supervised visits from October 2019 to January 2020, failure to obtain suitable housing, failure to maintain consistent employment, her failure—until May 2020—to begin therapy, and failure to refrain from contact with K.G.

A day later, the circuit court conducted a status hearing but did not take up the guardian's motion. Instead, the court instructed that a "detailed list" be prepared of tasks for which A.G. would have to demonstrate "100% compliance" by June 30. DHHR compiled the list and e-mailed the list to A.G.'s counsel the following day.

The circuit court conducted a telephonic status hearing on June 30, 2020. At the hearing, the guardian *ad litem* detailed A.G.'s failure to achieve full compliance with her improvement plan. Despite the circuit court's previous insistence on "100% compliance," the circuit court did not terminate A.G.'s improvement period or set the matter for a dispositional hearing. Instead, the Court asked to be "notified immediately" if A.G. missed "even one" drug screen or other appointment and commanded A.G. to continue her improvement period with "strict compliance" and no contact with K.G.

The circuit court conducted another telephonic status hearing in July. The guardian reported that A.G. had missed some parenting and life skills sessions, and that no further services had occurred after July 9. When the provider explained that services had been terminated for non-compliance, the court instructed DHHR to find another provider.

5

Regarding visitation, the court was advised that A.G. continued to have no visits with the W Children because they refused to see her. A.G. claimed that she was having telehealth sessions with a counselor once a week, however, neither the guardian nor DHHR could verify this claim without releases from A.G. A.G. claimed that she had applied for housing in Ohio and that she was willing to apply for housing in West Virginia. Despite all these indications of non-compliance, the Court refused to terminate A.G.'s improvement period, blaming DHHR for "not following up on its obligations." The court again advised A.G. that "strict compliance" was expected, and she was ordered to meet DHHR in Chester, West Virginia, every Wednesday so DHHR could transport her to her drug screen.

An August 2020 MDT report indicated that A.G.'s attorney said he planned to seek a guardian *ad litem* for her, due to her low IQ. DHHR reported that A.G. had attended just 13 of 35 life skills sessions and just 13 of 39 parenting sessions. DHHR planned to join the guardian *ad litem*'s motion to terminate A.G.'s improvement period. There were additional reports that A.G. was having contact with K.G. Video-conference visitation was going well, however, and the G Children still wished to be with A.G.

Later that month, the parties appeared for a telephonic status hearing. DHHR still lacked counseling releases. The circuit court told A.G. to provide such releases to DHHR as soon as possible. DHHR had yet to find a new service provider. Of the three available providers, one could not take on a new client, and the remaining two refused to accept A.G. due to her history of non-compliance. A.G. remained unemployed and had not been drug screened since the July status hearing. She was staying in a friend's trailer

6

in Ohio. The court advised that it did not believe a guardian for A.G. was warranted. The circuit court noted that the guardian *ad litem*'s motion to terminate A.G.'s improvement period was still pending, but rather than taking testimony, the court ordered the guardian and A.G.'s counsel to submit proposed findings of fact and conclusions of law, advising that the court would decide whether testimony was necessary after reading their submissions.[8]

In September 2020, the guardian *ad litem* and A.G.'s counsel filed proposed findings of fact and conclusions of law. A.G.'s proposed findings blamed DHHR for failing to provide accommodations for A.G.'s intellectual limitations and cast further blame on the hardships related to the Covid pandemic. When the parties appeared for a status hearing later that month, the court commented that A.G. was "trying to change" but her record was not "good in the past." The court further opined that A.G. would "never be in a position to support all these children" and that the court saw "no way" to "return all these children to" A.G. Accordingly, the court suggested a "Disposition 5" guardianship *for the W Children*. The guardian *ad litem* advised that DHHR still had not found a service provider and indicated that A.G. remained without stable housing. Despite the court's expressed pessimism, the court advised that the improvement period would "technically continue" and that the court would rule on the guardian's motion to terminate A.G.'s improvement period before the next hearing.

---

[8] In September 2020, DHHR filed an amended petition regarding H.K.G., who was born in August 2020. The amended petition indicated that A.G. remained homeless and continued to have contact with K.G.

In October 2020, the court-appointed special advocate ("CASA") issued a written report describing her interviews with the G Children. The older children, P.G.-1 and P.G.-2, described domestic violence in the home, and the younger child, K.G., Jr., acknowledged that there was at least some time when he felt "unsafe" with A.G. Nevertheless, all three children wished to be with A.G.

Later that month, the circuit court entered an order terminating A.G.'s improvement period with respect to the W children and denying the motion with respect to the G Children. According to the order, the guardian's "obsessive concern" with A.G.'s "failure to comply with the improvement plan is based on solid evidence[,]" and A.G.'s "compliance has been less than satisfactory." Though the circuit court admitted that it was "well aware that it has greatly exceeded the amount of time an improvement period should last," the court editorialized that circuit judges labor under "[u]nrealistic time deadlines" and that most parents suffer from "deficiencies that can be remedied in a reasonable amount of time[,]" though that was "many more months than the time limits imposed by statute and the Rules[.]" The circuit court further opined that "[t]he statute and the rules do not address the [c]ourt's consideration of young children's feelings when termination of parental rights has to be considered."

Placing the blame for A.G.'s failure to comply with the terms of the post-adjudicatory improvement plan on DHHR, the court concluded that DHHR and the guardian *ad litem* failed to prove any "efforts to accommodate . . . [A.G.]'s limited intellectual functioning, particularly but not limited to requiring computer proficiency for

8

virtual parenting and life skills classes and attainment of employment." The circuit court further held that "instead of accommodating for the classes, the [DHHR] quit providing them." The court also determined that DHHR and the guardian *ad litem* failed to show that sufficient accommodations had been made for hardships brought on by the pandemic. Accordingly, A.G.'s improvement period for the G Children was continued, and the MDT was instructed to ensure that the improvement period "makes sufficient accommodations to . . . [A.G.]'s intellectual disabilities, to the pandemic, and the current economic crisis" and to "present any recommended modifications and accommodations to the [c]ourt for its approval."

Later that month, the MDT convened by video conference and issued a report that addressed DHHR's alleged failure to accommodate A.G.'s limitations. According to the report, A.G. denied needing assistance with computer proficiency and regularly used videoconferencing technology to visit the G Children and participate in MDT meetings and hearings. When the MDT discussed possible accommodations for her learning disabilities, she indicated that her previous provider had done many of those things and said that she needed someone who would provide similar instruction.

In January 2021, the guardian *ad litem* advised the circuit court by letter of A.G.'s ongoing inconsistent compliance, and CPS submitted a report noting that the G Children had been in DHHR custody *for 25 months* and in their current foster placement for *21 months*. According to CPS, the G Children were "strongly bonded" with their foster parents, who loved them as their own children. However, the foster parents declined to

9

continue fostering the G Children, explaining that, "with no end in sight, they simply cannot continue." The report further advised that DHHR remained unable to find a service provider that was both willing and able to accept A.G. Ultimately, CPS recommended that A.G.'s improvement period be terminated.

Later that month, the parties appeared for a telephonic status hearing. The court acknowledged the guardian *ad litem*'s letter describing A.G.'s "less than compliant" participation in drug screens and supervised visits and, commenting that "it was never full compliance for" A.G., inquired about her compliance with other conditions of her improvement plan. DHHR reported that it remained unable to find a service provider that was both willing and able to accept A.G., and the guardian *ad litem* advised that, in view of the foster parents' refusal to continue fostering, the G Children would be moved to another foster family.

In March 2021, the court convened for yet another status hearing by telephone and video-conference. The guardian reported that A.G. attended several drug screens and supervised visits, though she had missed one for no apparent reason, one because DHHR could not provide transportation, and one because she was sick. She claimed that she was in job training and that she was living in her own house with help from relatives. The circuit judge remarked that the "case cannot go on forever, but . . . we do not terminate parental rights because the family is poor." The court also noted that A.G.'s screens did not indicate drug abuse. Notwithstanding A.G.'s apparent compliance in this area, the guardian *ad litem* noted that A.G. had never participated in counseling and

10

renewed the motion to terminate A.G.'s improvement period, which motion was denied over DHHR's objection. When the guardian *ad litem* reported that P.G.-1 and P.G.-2 were having a hard time understanding why they had a new foster home and had not been returned to A.G., the court advised the guardian to tell the boys that A.G. "was working on her issues." According to the court, the boys' hope to return to their mother "helps buy time[.]" The court ordered, yet again, that A.G. "continue on her post-adjudicatory plan of improvement[.]"

Two weeks later, the guardian *ad litem* filed this writ petition.[9]

## II. STANDARD FOR ISSUANCE OF WRIT

The guardian *ad litem* seeks a writ that would prohibit the circuit court from granting further extensions to A.G.'s improvement period. Though "the decision to grant or deny an improvement period is generally an act within the circuit court's discretion, . . . discretionary acts are not immune from the extraordinary remedy of . . . prohibition." *State*

---

[9] Both the guardian *ad litem* and DHHR submitted status updates before oral argument. *Cf.* W. Va. R. App. P. 11(j) ("The parties shall provide a written statement of any change in the circumstances that were set forth in the briefs within one week of any oral argument scheduled by the Court or within such other time as may be specified by order."). Though this case is before us under Rule 16 of the West Virginia Rules of Appellate Procedure, we appreciate the guardian's and DHHR's status updates and have considered them in reaching our decision. The updates reported that the G Children had returned to their previous foster family, who wished to adopt them. A.G.'s residence, however, was unknown, though she was believed to be living in Ohio. She had not received any recent services and had not seen the G Children in person for months. She was visiting the boys by video conference, though her participation was inconsistent. A.G.'s attorney did not file a status update but advised the Court, at oral argument, that A.G.'s improvement period for the G Children had been terminated. This development does not render this matter moot because issuance of the rule to show cause stayed "all further proceedings . . . for which an award of a writ of prohibition is sought." W. Va. R. App. P. 16(j).

11

*ex rel. S.W. v. Wilson*, 243 W. Va. 515, 519, 845 S.E.2d 290, 294 (2020) (footnote omitted).

We have held that "[p]rohibition is available to abused and/or neglected children to restrain courts from granting improvement periods of a greater extent and duration than permitted under [W. Va. Code §§ 49-4-601 *et seq.*]." *Id.*, 243 W. Va. at ___, 845 S.E.2d at 291, syl. pt. 2, in part. Prohibition is available in such cases because a circuit court that grants improvement periods in excess of statutory limits abuses and "exceeds its legitimate powers." W. Va. Code § 53-1-1 (eff. 1882) ("The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.").

> "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

*S.W.*, 243 W. Va. at \_\_\_, 845 S.E.2d at 291, syl. pt. 1.  With this standard of review in mind, we will consider the guardian's petition.

### III. ANALYSIS

As noted above, the guardian *ad litem* asks us to prohibit the circuit court from further extending A.G.'s post-adjudicatory improvement period.  In particular, the guardian asks us to order the circuit court to either set this matter for a dispositional hearing or terminate A.G.'s parental rights.[10]  According to the guardian, the circuit court "committed clear error of law in allowing the repeated informal extension of an improvement period that exceeded the time limits on foster care imposed by West Virginia Code Section 49-4-610(9)[.]"  The guardian observes that the G Children have been in foster care since November 2018.  She contends that A.G. has failed to comply with the terms of her improvement plan and that "there is no reasonable likelihood that . . . [A.G.] can correct the conditions of abuse and neglect given that she has been unable to do so in twenty-four months."  The guardian fears that "there may never be a decision for any party to appeal due to the circuit court's unwillingness to terminate the improvement plan and set the matter for disposition."  Indeed, she notes that "the circuit court has never allowed an evidentiary hearing to go forward in this matter" and that "there has been no sworn

---

[10] Petitioner also asks us to prohibit the circuit court from delaying further disposition with respect to the W Children and H.K.G.  DHHR joins this request.  We refuse to grant this relief because these children are not before the Court.  We note, further, that Petitioner asks us to order the circuit court to terminate K.G.'s parental rights as a consequence of terminating A.G.'s parental rights.  Because we remand this matter for appropriate disposition of A.G.'s rights, we decline to address the disposition of K.G.'s rights.

testimony" in the case. DHHR joins the guardian's request for relief and asks the Court to grant the guardian's writ petition and remand this matter to the circuit court for further proceedings and with instructions to terminate A.G.'s parental rights with respect to the G Children.

A.G. concedes that she "has not been in full compliance with her improvement plan[,]" though she contends that she "has succeeded or at least made progress on a number of the [plan's] goals[.]" She argues that termination is not mandatory "solely" because the children have been "in foster care for fifteen of the most recent twenty-two months[.]" According to her, West Virginia Code Sections 49-4-605 (eff. 2018) and 49-4-610 (eff. 2015) provide exceptions based on the children's preferences and best interests, and she emphasizes that the G Children remain bonded with her and wish to return to her care. She contends that the "most appropriate action . . . is to allow or, if deemed necessary, to direct the circuit court to hold an evidentiary hearing on the [guardian *ad litem*]'s motion to terminate A.G.'s improvement period for" the G Children.

### A. Improvement Period

We begin by observing that the circuit court's grant of A.G.'s initial improvement period was not made in accordance with West Virginia law. The West Virginia Code says that a circuit court "may grant a respondent an improvement period . . . *when* . . . [t]he respondent files a *written* motion requesting the improvement period[.]" W. Va. Code § 49-4-610(2) (emphasis added). "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or

14

part of the statute." Syl. Pt. 6, in part, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 671 S.E.2d 682 (2008). "This 'cardinal rule' applies to all words in a statute, even words as small and seemingly insignificant as ['when' and 'written']." *State ex rel. Monster Tree Serv., Inc. v. Cramer*, 244 W. Va. 355, ___, 853 S.E.2d 595, 606 (2020) (noting the significance of "stamp" in W. Va. Code § 56-3-33(c) (eff. 2017) and other statutes). In West Virginia Code § 49-4-610(2), the word "when" indicates that the Legislature has imposed a necessary condition on the circuit court's authority to grant improvement periods; the word "written" indicates what particular form a request for an improvement period must take.

However, in this case, the necessary condition—"a *written* motion requesting the improvement period"—was absent. W. Va. Code § 49-4-610(2)(A) (emphasis added). Based on the docket sheet, there is no evidence that A.G. has ever filed a written motion seeking an improvement period. In the absence of a *written* motion, the circuit court should not have granted a post-adjudicatory improvement period to A.G. We have said this before. *See In re J.G.*, 240 W. Va. 194, 202, 809 S.E.2d 453, 461 (2018) ("As plainly stated therein, West Virginia Code § 49-4-610(2) permits a post-adjudicatory improvement period . . . upon *written* motion . . . ."); *accord In re J.C.*, 232 W. Va. 81, 89, 750 S.E.2d 634, 642 (2013) (per curiam) ("Here, the mother's request for an improvement period fails in two ways. First, . . . she does not state nor does the record reflect that she filed a written motion for an improvement period as required by West Virginia Code § 49–6–12."). Accordingly, we now hold that a circuit court may not grant a post-adjudicatory

15

improvement period under W. Va. Code § 49-4-610(2) (eff. 2015) unless the respondent to the abuse and neglect petition files a written motion requesting the improvement period. Again, because we find that no such motion was filed, we also find that the circuit court improperly granted a post-adjudicatory improvement period to A.G.[11]

Even if A.G.'s improvement period had been properly granted, we find that it has continued for an unlawful period of time. West Virginia Code § 49-4-610(2) states that "a court may grant a respondent an improvement period of a period not to exceed six months[.]" The six-month period may be extended, but only "for a period not to exceed three months" and only when the circuit court finds "that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child." W. Va. Code § 49-4-610(6).

The circuit court did not comply with these requirements. First, though the statute authorizes a court to extend a post-adjudicatory improvement period "for *a period not to exceed three months[,]*" *ibid.* (emphasis added), the circuit court informally extended A.G.'s improvement period numerous times. In fact, when the guardian *ad litem* filed her

---

[11] There is at least one other problem with the origin of A.G.'s improvement period. Based on the docket sheet, it does not appear that the circuit court ever entered an "order granting the improvement period[.]" W. Va. Code §§ 49-4-610(2)(C) & (E). A straightforward reading of the statute indicates that a circuit court may not grant an improvement period unless the circuit court enters an order to that effect, one that sets a review hearing and requires DHHR to submit an individualized family case plan. *Ibid.*

16

petition for writ of prohibition, A.G.'s improvement period appears to have already been in effect for more than 22 months.[12] These extensions were improper. West Virginia Code § 49-4-610(6) (eff. 2015) authorizes only *one* extension of a post-adjudicatory improvement period.

Secondly, there is no indication in the record that the circuit court ever imposed any limits on these extensions. The circuit court did not grant an extension "for a period not to exceed three months[.]" W. Va. Code § 49-4-610(6). To the contrary, the circuit court simply continued A.G.'s improvement period generally, with no express limit on how long the extension would last. The order from the February 2020 status hearing,[13] for example, simply provided that A.G. "continue on her post-adjudicatory plan of improvement[.]" This was improper. West Virginia Code § 49-4-610(6) (eff. 2015) provides that when a circuit court extends a post-adjudicatory improvement period, the extension must be for a period that does not exceed three months.

Finally, there is no indication in the record that the circuit court ever made any of the statutorily required findings before continuing A.G.'s improvement period. Based on the appendix record, the circuit court has never found that A.G. "has substantially complied with the terms of the improvement period[.]" W. Va. Code § 49-4-610(6). Instead, the circuit court has repeatedly warned A.G. to correct her non-compliance. In

---

[12] This timeline assumes that A.G.'s improvement period began in May 2019 when her post-adjudicatory improvement plan was filed with the circuit clerk.

[13] By that point, A.G.'s improvement period had been in place for nine months.

October 2020, the circuit court observed that the guardian *ad litem*'s concern with A.G.'s "failure to comply with the improvement plan is based on solid evidence" and that A.G.'s "compliance has been less than satisfactory." As recently as March 2021, the circuit court advised the guardian to tell the G Children that A.G. "was working on her issues." Even A.G. concedes that she "has not been in full compliance with her improvement plan."

Moreover, the circuit court has never found "that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child[ren.]" W. Va. Code § 49-4-610(6). Such a finding would have been difficult to make because the repeated continuation of A.G.'s improvement period *did impair*, at least for a period of time, DHHR's ability to place the G Children with their foster parents, so much so that the foster parents ceased fostering them for a time.

Finally, and perhaps most importantly, the circuit court has never found that extending A.G.'s improvement period was "consistent with the best interest of the child[ren]." W. Va. Code § 49-4-610(6). Under the circumstances, we doubt that such a finding could even have been made. From the record, A.G.'s key shortcoming as a parent was her failure to protect the children from domestic violence. Yet the psychologist's report, which was filed soon after A.G. was granted an improvement period, shows that A.G. professed not to "know why [CPS] showed up" and denied that "[t]here was []ever any [domestic violence] in the house." In fact, she accused her children of telling "too many stories[.]" As we have said on many occasions, "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged

18

abuse and neglect . . . , results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *W. Va. Dep't of Health & Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 498, 475 S.E.2d 865, 874 (1996).

Granting an improvement period extension without making these findings was clear error. As we have held before,

> Pursuant to West Virginia Code § 49-[4-610(6) (eff. 2015)], before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period would not substantially impair the ability of the Department of Health and Human Resources to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.

Syl. Pt. 7, in part, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (per curiam).

Even if A.G.'s numerous improvement-period extensions had been supported by appropriate findings, we find that they were still improper because, in the aggregate, they allowed the G Children "to be in foster care more than fifteen months of the most recent twenty-two months[.]" W. Va. Code § 49-4-610(9). As A.G. points out, the statute contains an exception for cases where "the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph." *Ibid.* However, in A.G.'s case the circuit court never made these findings. "The language of West Virginia Code § 49-4-610(9) could not be clearer that unless the court makes detailed findings that clear and convincing evidence shows that an extension is in the best interest of the children, its time limitations apply."

19

*S.W.*, 243 W. Va. at 519, 845 S.E.2d at 294. In this case, rather than making the necessary findings, the circuit court stated that it was "well aware that it has greatly exceeded the amount of time an improvement period plan should last." The circuit court, nonetheless, challenged the wisdom of the statute and the rules imposed by this Court, lamenting that the statute and rules impose "[u]nrealistic time deadlines" and fail to account for "young children's feelings when termination of parental rights has to be considered."

A circuit court may disagree with the statute and rules, but it is not at liberty to ignore them.

> To whatever extent our expansive body of caselaw regarding the circuit court's paramount duties in cases of abuse and neglect is unclear, let us now lay the matter squarely to rest. *The procedural and substantive requirements of West Virginia Code § 49-4-601 et seq., the Rules of Procedure for Child Abuse and Neglect, and our extensive body of caselaw are not mere guidelines.* The requirements contained therein are not simply window dressing for orders which substantively fail to reach the issues and detail the findings and conclusions necessary to substantiate a court's actions. *The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority.* Discretion granted to the circuit court within this framework is intended to allow the court to fashion appropriate measures and remedies to highly complex familial and inter-personal issues—it does not serve as a blanket of immunity for the circuit court to manage abuse and neglect cases as its whim, personal desire, or docket may fancy. . . . The circuit court's inexplicable penchant for "kicking the can" down the proverbial road in this matter flies directly in the face of every directive enacted by the Legislature and articulated by this Court as pertains to the timely disposition of abuse and neglect matters.

*J.G.*, 240 W. Va. at 204–05, 809 S.E.2d at 463–64 (emphasis added).

20

As we have said before, we are "not unsympathetic to the difficult task of procedurally managing the unfortunate volume of abuse and neglect cases, while weighing the significant interests and life-altering decisions necessary in these matters." *Id.*, 240 W. Va. at 205, 809 S.E.2d at 464. On the contrary, "[i]t is precisely *because* the court's actions in these matters is so starkly life-altering that it must comply with the carefully curated time requisites and evidentiary requirements contained in our statutory scheme[.]" *Ibid.*

A.G. attempts to excuse the circuit court's refusal to follow the statute by pointing to the G Children's "very strong emotional attachment" to A.G. According to A.G., the October 2020 CASA report served "as the primary basis for allowing A.G.'s improvement period for these children to continue[.]"

We agree that concern for the G Children's attachment to A.G. appears to have played a substantial role in the circuit court's decision to grant repeated extensions to A.G.'s improvement period. However, at the ages of five and eight, these children were not old enough to decide what was in their best interests. *Cf.* W. Va. Code § 49-4-604(c)(6)(C) (eff. 2020) ("Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights."). As we observed more than a quarter-century ago,

> [a] circuit judge overseeing a case such as this has an immensely difficult task, for in many abuse and neglect cases there is a genuine emotional bond as well as the natural biological bond between parent and child which courts are understandably hesitant to break if there is hope of meaningful change. . . .

21

. . . .

Although it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996).[14]

Based on all of the foregoing, we find that the circuit court committed clear error (a) when it allowed A.G. to participate in an improvement period without filing a written motion for an improvement period and (b) when it allowed A.G.'s improvement period to continue for a period of time that *far exceeded* statutory limits and without making necessary statutory findings. Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). We also find that the circuit court orders that extended A.G.'s improvement period resulted in damage or harm "that is not correctable on appeal" and that these orders "manifest[ed] persistent disregard for . . . procedural . . . law[.]" *Ibid.* Further, we find that, given the circuit court's knowing disregard for statutory limits on

_____

[14] A.G. also argues that DHHR has discretion to refrain from filing a petition to terminate parental rights when DHHR identifies "a compelling reason, including, but not limited to, the child's age and preference regarding termination . . . that filing the petition would not be in the best interests of the child" or when DHHR has failed to provide such "services to the child's family as the department deems necessary for the safe return of the child to the home." W. Va. Code §§ 49-4-605(b)(2) & (3). We disagree with A.G.'s apparent belief that DHHR's discretion under West Virginia Code § 49-4-605(b) to refrain from filing a petition somehow extends to the circuit court's time limitations to decide disposition in a pending matter.

A.G.'s improvement period, the guardian *ad litem* had "no other adequate means, such as direct appeal, to obtain the desired relief[.]" *Ibid.* Accordingly, we grant the guardian *ad litem*'s petition and prohibit the circuit court from granting any further extensions to A.G.'s post-adjudicatory improvement period.[15]

## B. Action on Remand

The guardian *ad litem* seeks an evidentiary dispositional hearing or termination of A.G.'s parental rights to the G Children. The West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provide that a "disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted pursuant to W.Va. Code § 49-4-610(2) and then no later than thirty (30) days after the end of the improvement period." W. Va. R. P. Child Ab. & Negl. P. 32(a). By that standard, a dispositional hearing is long overdue.[16]

---

[15] In granting this relief, we commend the guardian *ad litem* for seeking the writ in this case, but at the same time believe that, under the circumstances present in this case, the petition for a writ of prohibition should have been sought sooner. "[W]hen the circuit court is in such egregious violation of the time standards contained in West Virginia Code § 49-4-601 *et seq.*, prudence and zealous advocacy would suggest that the DHHR and/or guardian ad litem are *burdened* with seeking such relief." *J.G.*, 240 W. Va. at 205 n.17, 809 S.E.2d at 464 n.17 (emphasis added).

[16] As noted above, no "adjudicatory order" appears on the docket sheet or in the appendix record. Nevertheless, an October 2020 order states that A.G. was adjudicated based on her stipulated failure to protect the children from K.G. Based on the docket sheet, we assume that this adjudication occurred at a May 2019 "status hearing" and that A.G.'s adjudication is memorialized in the "status hearing order" that emerged from the May 2019 hearing.

23

A dispositional hearing is also the hearing at which a circuit court decides whether, among other options, to terminate parental rights. W. Va. Code § 49-4-604(c). We have authority to instruct the circuit court to terminate a party's parental rights on remand, and we have exercised this authority as recently as last year. *See S.W.*, 243 W. Va. at 521, 845 S.E.2d at 296 (concluding that "it is in the children's best interest to terminate S.K.'s parental rights" and "instruct[ing] the circuit court to do so on remand"). However, there is a crucial difference between this case and *S.W.*—in *S.W.* the circuit court had conducted an evidentiary dispositional hearing pursuant to West Virginia Code § 49-4-604 before it granted a post-dispositional improvement period and before it declined to terminate the parent's rights. *Id.*, 243 W. Va. at 518, 845 S.E.2d at 293. In A.G.'s case, the circuit court has yet to conduct a dispositional hearing and has avoided conducting an evidentiary hearing on the guardian *ad litem*'s motion to terminate A.G.'s improvement period. In fact, the guardian *ad litem* contends that "there has been no sworn testimony on this topic or any other"—a claim that A.G. does not dispute.

Because of this absence of an evidentiary record, we have an insufficient basis for deciding whether A.G.'s parental rights should be terminated, and we decline to make such determination. Nevertheless, we find that a *prompt evidentiary* dispositional hearing is essential in this matter, and we direct the circuit court to conduct such a hearing immediately upon remand.

24

## IV.  CONCLUSION

For these reasons, we conclude that the circuit court erroneously and repeatedly extended A.G.'s improvement period and that the circuit court's error resulted in harm that could not be addressed on appeal.  Accordingly, we grant the writ requested by the guardian *ad litem* prohibiting the circuit court from granting any further extensions to A.G.'s post-adjudicatory improvement period.  We also remand this case to the circuit court for disposition, and we instruct the circuit court to hold an *immediate* evidentiary hearing to determine the appropriate disposition.  The Clerk of this Court is hereby directed to issue the mandate forthwith.

Writ granted, and case remanded with instructions.