# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.F.-1 and J.F.-2**

**No. 21-0575** (Wood County 19-JA-243 and 19-JA-249)

## MEMORANDUM DECISION

Petitioner Father M.F., by counsel Eric K. Powell, appeals the Circuit Court of Wood County's June 22, 2021, order terminating his parental rights to J.F.-1 and his custodial rights to J.F.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Keith White, filed a response on behalf of the children in support of the circuit court's order. Intervenor Foster Parents B.B. and M.B., by counsel Michael D. Farnsworth, filed a response also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he was compliant with the terms and conditions of his improvement period and erred in failing to grant an extension to his improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed an abuse and neglect petition against mother J.S. alleging that she gave birth to J.F.-1 after her parental rights to other children (not children of petitioner) had been previously involuntarily terminated in 2013 and 2015. According to the DHHR, J.S. admitted to using marijuana during her pregnancy with J.F.-1 and explained that petitioner was J.F.-1's father but he was currently incarcerated. The DHHR concluded that J.S. had not had a change in circumstances and filed the instant petition. The DHHR filed an amended

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as J.F.-1 and J.F.-2, respectively, throughout this memorandum decision.

petition in January of 2020, adding J.F.-2 as a respondent child of petitioner and stating that the child was in guardianship with a relative, S.A., and that petitioner exercised visitations with the child. There were no allegations of abuse and neglect against petitioner at that time.

The circuit court held an adjudicatory hearing in February of 2020, wherein it adjudicated J.S. as an abusive and neglectful parent and granted her a post-adjudicatory improvement period. In June of 2020, petitioner was released from incarceration and did not independently seek custody of J.F.-1 as a nonabusing parent.[2] Rather, he moved in with J.S. At a review hearing in September of 2020, the court ordered the DHHR to provide petitioner services, and he participated in a de facto preadjudicatory improvement period, as the DHHR required him to, among other things, abstain from using drugs or alcohol and from possessing the same; maintain an appropriate home; obtain a safe, stable living environment; participate in adult life skills and parenting education sessions; submit to drug screens; and exercise supervised visits with the children.[3] At the same hearing, the parties agreed to begin reunification measures with J.F.-1 and extended J.S.'s post-adjudicatory improvement period.

However, on September 15, 2020, a few hours after J.S. and petitioner exercised their first unsupervised home visit with J.F.-1, the couple engaged in severe domestic violence. As a result, the DHHR filed an amended petition on September 25, 2020, alleging that law enforcement officers reported finding both petitioner and J.S. with bloodied faces and obvious injuries. The officers noted that J.S.'s breath smelled of alcohol and that she claimed petitioner hit himself. J.S. also stated that petitioner grabbed her and threw her to the floor, causing her to break her nose and that the fight started due to petitioner's verbal abuse and alleged infidelity. She stated that she struck petitioner in self-defense as she tried to leave the house. Petitioner told police that J.S. "drinks a lot" and had been drinking that day when the couple had an argument at dinner. Petitioner reported that J.S threw his plate of food on the floor and he poured her beer over her. He stated that J.S. repeatedly hit him on the head, and he bit her arm in self-defense. After interviewing petitioner and J.S., and observing the crime scene, officers determined that J.S. was the primary aggressor and arrested her. Thereafter, a CPS worker interviewed J.S., who stated that petitioner obtained a domestic violence protective order only to avoid having his parole revoked. J.S. also admitted to purchasing beer but denied drinking it and wrote to the worker that she believed that her progress was going well before petitioner came home from jail. J.S. stated that she alone had "done everything" for J.F.-1 and outlined that the only supplies petitioner had provided was a "small pack of diapers, [one] sippy cup, and one set of bowls."

---

[2]In cases where a parent remains in a relationship with any individual that has been deemed inappropriate or a threat to the child or children's wellbeing, such as a parent whose rights to any child or children have already been terminated, the Court encourages multidisciplinary teams to address this barrier to reunification as soon as possible. We further encourage circuit courts to explicitly require the DHHR's case plans to address any concerns with respondent parents continuing to reside together if separation is necessary for one or more parents to achieve reunification with the child or children. Such practices clarify what is required of respondent parents and better situate the circuit courts to address any future issues arising between the parents.

[3]The record contains a rubric of requirements drafted by the DHHR for a preadjudicatory improvement period for petitioner, which stated that it began on September 4, 2020.

Despite initially telling the CPS worker that J.S. would not be allowed back into the home, petitioner then requested that the domestic battery charge be dismissed. In his statement to the prosecutor requesting dismissal, he wrote, "I want to drop the charges on [J.S.] [W]hat happen[ed] should have never went that fare (sic) but she has fought tooth and nail for her son and I don't want he (sic) to lose him over all this." Petitioner likewise failed to prosecute the domestic violence petition he filed against J.S. Thereafter, the couple continued living together. The DHHR concluded that the couple engaged in domestic violence and that petitioner failed to protect the children by requesting the criminal charges against J.S. be dismissed and filed an amended petition.

In a court memorandum summary dated November 9, 2020, the assigned CPS worker explained that she was concerned with petitioner requesting the dismissal of the criminal charges against J.S. because he did not refute that the domestic violence took place and only requested dismissal to allow J.S. to reunify with J.F.-1. The worker emphasized that J.S.'s prior terminations were due in part to domestic violence and, as such, she did not believe J.S. would rectify the conditions of abuse. She recommended the termination of J.S.'s parental rights.

In mid-November of 2020, the circuit court held an adjudicatory hearing, wherein petitioner stipulated to failing to protect the children by requesting to dismiss the criminal case against J.S. and failing to pursue the domestic violence protective order against J.S. The court accepted petitioner's stipulation and granted him a post-adjudicatory improvement period. A DHHR provider stated in her report in December of 2020 that a barrier to petitioner's reunification with his children was his continued relationship with J.S. In February of 2021, the court adjudicated J.S. on the new allegations of domestic violence and, against the objections of the DHHR, granted her a post-dispositional improvement period. Again, in February of 2021, a provider noted that a barrier to reunification for petitioner was the inability to perform at-home visits with the child due to his continued living with J.S.

A couple of months later, in April of 2021, the foster parents, B.B. and M.B., filed a motion to intervene, citing J.F.-1's being placed in their custody for fifteen months of the most recent twenty-two months. At a review hearing held in May of 2021, the DHHR reported that J.S. was twenty weeks pregnant with petitioner's child and that she and petitioner were otherwise compliant with the terms of their improvement periods. The circuit court granted the foster parents' motion to intervene without objection of the parties. The circuit court ordered that services for petitioner continue but noted that the statutory time limits contained in West Virginia Code § 49-4-605(a)(1) had been surpassed.[4]

On May 21, 2021, providers visited petitioner's home where they found twenty-eight large aquariums filled with fish and many without lids. The workers found a mother cat and four kittens

---

[4]The DHHR is required to seek termination when a child

has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home.

W. Va. Code § 49-4-605(a)(1).

with an unchanged litter box causing the home to smell of cat urine. There were also two dogs, two rabbits, a chameleon, and many flies and bugs in the home. The worker noted that the rabbits had their own room, but there was no bedroom free of animals designated for the children. A ceiling was also noted to be caving in, and when asked why it was not repaired, J.S. replied that it was too expensive. When asked about the costs for all of the animals' food, J.S. answered twelve dollars a month for fish food and did not address the other animals. J.S. was defensive when workers asked her to address these concerns and refused to change anything without the court ordering it. Due to the foul odor and other issues, the providers decided to keep visits with the children at their headquarters.

Prior to the final dispositional hearing, a CPS worker submitted a memorandum summary stating that petitioner had not submitted summaries from his parenting education classes, had not submitted updated employment information, and had not had contact with the worker since May of 2021. The worker also noted numerous concerns with the conditions of the home and the amount of time J.F.-1 had spent in foster care due to petitioner's incarceration and eventual failure to protect the child from J.S. after the domestic violence incident.

On June 16, 2021, the circuit court held a final dispositional hearing. The circuit court heard arguments that J.F.-1 had been in the foster parents' care for nearly seventeen months and that there were no compelling circumstances to extend petitioner or J.S.'s improvement periods beyond the statutory time limits. J.S. argued that her pregnancy was a compelling circumstance to extend the statutory time limits, but the court disagreed, finding that petitioner's pregnancy was a choice she made while knowing she had a pending child abuse and neglect action and that her parental rights to four other children had been previously involuntarily terminated. Likewise, petitioner argued in support of his previously filed motion to extend his post-adjudicatory improvement period and stated that he had only been granted a six-month post-adjudicatory improvement period. The court found that the petitioner voluntarily absented himself from caring for J.F.-1 due to his incarceration for a parole violation and failed to seek custody of J.F.-1 once he was released in June of 2020. The court specifically found that "rather than establishing a home for himself and [J.F.-1, petitioner] chose to leave his child in foster care and live with [J.S.]" The court found that petitioner's behavior was akin to "leaving the baby on a shelf while he focused on the relationship with [J.S.]" As such, the court found that there were no compelling circumstances to extend petitioner's improvement period beyond the statutory time frame. The court noted that "the test is not whether a parent is attending appointments and classes but whether the parent has changed his/her behavior to make them an appropriate parent to have the children safely returned." The court also noted that petitioner's home was unfit and that visitations were stopped due to the home's poor conditions. Finally, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was in J.F.-1's best interest. The court also terminated petitioner's custodial rights to J.F.-2. It is from the June 22, 2021, dispositional order that petitioner appeals.[5]

---

[5]The respective mothers' parental rights to the children were terminated below. The permanency plan for J.F.-1 is adoption by his foster family, and the plan for J.F.-2 is to remain in permanent guardianship with a relative.

4

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he had substantially completed most of the terms and conditions of his post-adjudicatory improvement period. Petitioner contends that he remained drug free and was appropriate during all visits with the children. According to petitioner he increased his bond with J.F.-2 and created a bond with J.F.-1. Petitioner's performance and bonds with the children, he argues, should have warranted compelling circumstances to extend his improvement period. Petitioner concedes that J.F.-1 had been in foster care for more than the statutory time limits but argues that he was not adjudicated and granted an improvement period until the last seven months of the proceedings.

It is undisputed that the statutory timeframes for child abuse and neglect matters were exhausted in this matter pursuant to West Virginia Code § 49-4-610(9), which provides that

> [n]otwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

Regarding improvement periods, this Court has noted that "[i]mprovement periods are . . . regulated, both in their allowance and in their duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally." *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000). We have noted that the requirements set forth in West Virginia Code § 49-4-610

> are not mere guidelines. . . . The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority. Discretion granted to the circuit court within this framework is intended to allow the court to fashion appropriate measures and remedies to highly complex familial and inter-personal

5

issues—it does not serve as a blanket of immunity for the circuit court to manage abuse and neglect cases as its whim, personal desire, or docket may fancy.

*In re J.G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018). "Critically, '[a] parent's rights are necessarily limited . . . [as to improvement periods] because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto.'" *Id.* (citation omitted). Additionally,

> the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Finally,

> "[p]ursuant to West Virginia Code § 49-[4-610(6) (eff. 2015)], before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period would not substantially impair the ability of the Department of Health and Human Resources to permanently place the child; and that such extension is otherwise consistent with the best interest of the child." Syl. Pt. 7, in part, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (per curiam).

Syl. Pt. 7, *State ex rel. P.G.-1 v. Wilson*, -- W. Va. --, -- S.E.2d --, 2021WL 5355634 (2021).

Here, the circuit court specifically found no compelling circumstances to extend petitioner's improvement period to allow J.F.-1 to continue in foster placement beyond fifteen months. Notably, by the dispositional hearing, J.F.-1 had been with the intervening foster parents for seventeen months, and the circuit court relied heavily on petitioner's apparent lack of interest in independently parenting J.F.-1. Indeed, for the majority of the time that J.F.-1 had been placed with the intervening foster parents, he could have been living with petitioner, but petitioner chose to live with J.S. instead. Accordingly, petitioner cannot complain of the length of time J.F.-1 had been in foster care, and thus the fifteen-month time limit, as he had the ability for a large portion of the case to have J.F.-1 in his own care as a nonabusing parent. In fact, petitioner's adjudication was essentially due to his failure to protect the children by failing to leave J.S. Had petitioner proceeded with the criminal charges against J.S. and the domestic violence petition, he could have remained a nonabusing parent and able to take custody of J.F.-1. However, due to petitioner's own poor choices, J.F.-1 remained in the care of the foster parents.

Additionally, petitioner failed to show how an extension to his improvement period would not have substantially impaired the DHHR's ability to permanently place J.F.-1 *and* that "such extension [wa]s otherwise consistent with the best interest of the child." *Id.* Although petitioner complied with many terms of his post-adjudicatory improvement period, he fails to show how J.F.-1's placement in foster care while sitting in legal limbo did not jeopardize the child's ultimate need

for permanency. Most importantly, petitioner cannot show how more time spent in foster placement rather than permanent placement was in J.F.-1's best interest. J.F.-1 had lived with the intervening foster parents for the entirety of his short life and deserved permanency and stability. This court has held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. While petitioner argues that he should have been given more time, our case law makes it abundantly clear that a parent's opportunity to continue to participate in an improvement period is not upheld to the detriment of the children. Accordingly, we find no error in the circuit court's denial of petitioner's motion for an extension to his post-adjudicatory improvement period.

The evidence, as set forth above, likewise supports the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. Petitioner was not only granted more than six months of services during his post-adjudicatory improvement period but was also provided three months of services during his de facto preadjudicatory improvement period. Petitioner's possession of alcohol as well as the domestic violence incident with J.S. were clearly violations of the terms and conditions of his preadjudicatory improvement period. Likewise, petitioner failed to maintain safe, stable, and adequate housing during his post-adjudicatory hearing as evidenced by the visitation providers ceasing home visits due to the home's condition. This evidence supports the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As such, we find no error in the circuit court terminating petitioner's parental rights to J.F.-1 or his custodial rights to J.F.-2.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton