# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.O., P.O., and M.O.**

**No. 21-0908** (Greenbrier County 21-JA-19, 21-JA-20, and 21-JA-21)

## MEMORANDUM DECISION

Petitioner Father B.O., by counsel Martha J. Fleshman, appeals the Circuit Court of Greenbrier County's October 6, 2021, order terminating his parental rights to K.O., P.O., and M.O.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Denise N. Pettijohn, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without affording him additional time to improve or imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2021, the DHHR filed a child abuse and neglect petition detailing a lengthy period of Child Protective Services ("CPS") intervention, beginning in February of 2020. The DHHR alleged that it received an initial referral that petitioner was abusing controlled substances and not attending to the medical needs of P.O., who suffered from spina bifida and required treatment with medical specialists in addition to heightened daily care. The DHHR alleged that P.O. had not seen her specialist in two years. Petitioner and the children lived with the paternal grandmother, who was involved with the daily care of the children. The DHHR initiated an in-

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

home safety plan later in February of 2020 to which petitioner and the grandmother agreed. The DHHR reported that petitioner was not compliant in services, however. Although random drug screening was a term of the safety plan, petitioner did not submit a sample until June of 2020 and petitioner's first drug screen result was positive for tetrahydrocannabinol ("THC") and amphetamines. The DHHR alleged that petitioner continued to test positive for either THC or amphetamines in July, August, and October of 2020. The DHHR further alleged that it received reports from petitioner's service providers in February of 2021 that petitioner had not been participating in services "since the beginning of January of 2021."

According to the petition, the DHHR received a second referral in March of 2021, wherein petitioner was observed in public "nodding off" and "having uncontrollable body movement[s]" while he was the sole caretaker for P.O. The DHHR alleged that petitioner tested positive for methamphetamine, amphetamine, alcohol, and THC the day after the second referral. According to the DHHR, petitioner stated that he "did not 'have a drug problem'" and that "what he does on his own time away from his children should not matter." The DHHR took emergency custody of the children and placed them with their grandmother.

The circuit court held an adjudicatory hearing in May of 2021, during which petitioner informed the court that he did not contest the allegations and was willing to stipulate to the allegations contained in the petition. Petitioner admitted that he tested positive for controlled substances for which he did not have a valid prescription and that, as a result, the children were neglected children. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, which the circuit court granted for a ninety-day period. The circuit court announced the terms and conditions for petitioner's improvement period, including requiring petitioner to participate in out-patient substance abuse treatment, unless a substance abuse treatment evaluation recommended a different treatment; obtain and maintain financial stability; maintain suitable housing for the children; participate in a parental fitness evaluation; participate in random drug testing and maintain negative results; participate in all court hearings and multidisciplinary treatment team meetings; participate in visitation with the children; and participate in parenting and adult life skills classes and utilize those skills with the children. The circuit court extended petitioner's post-adjudicatory improvement period in July of 2021, upon petitioner's motion.

In September of 2021, the guardian moved to terminate petitioner's post-adjudicatory improvement period. She alleged that petitioner denied any substance abuse in his parental fitness evaluation, stating he would not attend a substance abuse treatment program. The guardian further alleged that petitioner had not participated in any substance abuse treatment since the inception of his improvement period, achieved financial stability, or obtained suitable housing. According to the guardian, petitioner tested positive for cannabinoids in August of 2021 and failed to report for scheduled drug tests on August 16, August 25, and September 2, 2021. The guardian asserted that petitioner's failure to acknowledge his substance abuse rendered his improvement period an exercise in futility and that he had failed to fully participate in the improvement period.

Later in September of 2021, the circuit court held a hearing to review petitioner's post-adjudicatory improvement period. Petitioner did not appear, but counsel represented him. The

circuit court did not rule on the guardian's motion to terminate petitioner's post-adjudicatory improvement period but scheduled a dispositional hearing.

The circuit court held the final dispositional hearing on September 29, 2021. The DHHR presented testimony consistent with the allegations in the guardian's motion. A DHHR worker testified that petitioner's parental fitness evaluator recommended inpatient substance abuse treatment and weekly psychotherapy for petitioner, but petitioner did not follow either recommendation. The DHHR worker also testified that petitioner tested positive for opiates and THC during his improvement period and missed ten appointments for drug screening. The worker explained that petitioner most recently appeared for drug screening on August 2, 2021. Additionally, the DHHR worker testified that petitioner's parenting class provider reported that petitioner had not participated in classes throughout September of 2021. Petitioner's visitation supervisor testified that visitation between petitioner and the children was consistent and positive for the children. However, the supervisor noted that he could not reach petitioner to schedule visitations and resorted to scheduling all visitations through the grandmother, who would then schedule visitation with petitioner.

Petitioner explained that he had a massive heart attack in 2019, which limited his ability to work. Petitioner testified that he was in the process of applying for disability benefits, but that he had not yet been approved. Similarly, petitioner testified that he would apply for low-income housing once his disability benefits were approved. He explained that until then, he was living with a friend. Petitioner asserted that his heart condition required routine appointments and that he had three scheduled tests for the condition. He explained that he had postponed any substance abuse treatment because he was "more worried about [his] health and [his] heart." He asserted that he would participate in substance abuse treatment once his heart condition was under control but also testified that he did not believe that he needed substance abuse treatment. Petitioner affirmed that he told his parental fitness evaluator that he did not need substance abuse treatment. Petitioner further testified that he deliberately missed the two drug screens in August of 2021 because he needed time to get the THC out of his system. However, with regard to the next three missed drug screens in September of 2021, petitioner testified that he "just didn't go down there" because he was allegedly busy with medical appointments.

Ultimately, the circuit court found that petitioner failed to fully participate in the terms of his post-adjudicatory improvement period. The court found that petitioner failed to participate in outpatient or inpatient substance abuse treatment. While petitioner asserted that he could not participate in substance abuse treatment due to his heart condition, the court found that he raised this defense for the first time at the final dispositional hearing and that he provided no information as to how attending either an outpatient or inpatient treatment program would negatively affect his medical condition. The court further found that petitioner did not participate in random drug screening even though he was aware that the court could reasonably infer he was continuing to use illicit drugs if he failed to appear for screening. The court concluded that petitioner's failure to participate in the terms of his improvement period "was not due to any disability, but rather to unwillingness to participate in any form of substance abuse treatment[] and his failure to avail himself of the reunification services offered to him by the [DHHR]." Finally, the circuit court found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of

petitioner's parental rights was necessary for the welfare of the children. Accordingly, the circuit court terminated petitioner's parental rights to the children by its October 6, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than granting him additional time to remedy the conditions of abuse and neglect. His argument focuses on the mother's proceedings as she had been granted an improvement period and, according to petitioner, was likely to be granted a post-dispositional improvement period. Petitioner sets out a speculative timeline that estimates he would have nearly nine months of additional time to improve before the circuit court would be tasked with determining a permanent placement for the children. This estimate assumes that the mother will substantially comply with an improvement period and speculates that she will need an additional six-month post-dispositional improvement period as well as an extension to that improvement period. Petitioner suggests that during this extended improvement period, he would have sufficient time to remedy his heart condition and proceed to substance abuse treatment. Petitioner's argument is not persuasive.

> "Pursuant to West Virginia Code § 49-[4-610(6) (eff. 2015)], before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period

---

[2]The mother is currently participating in an improvement period and retains her parental rights. According to the parties, the permanency plan for the children is reunification with the mother with a concurrent plan of adoption by their grandmother, with whom the children are currently placed.

would not substantially impair the ability of the Department of Health and Human Resources to permanently place the child; and that such extension is otherwise consistent with the best interest of the child." Syl. Pt. 7, in part, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (per curiam).

Syl. Pt. 7, *State ex rel. P.G.-1 v. Wilson*, -- W. Va. --, -- S.E.2d -- (Nov. 17, 2021).

In this case, petitioner cannot meet the first requirement to be granted an extension to his post-adjudicatory improvement period. As the circuit court found below, petitioner was not substantially compliant with the terms of his post-adjudicatory improvement period. Petitioner tested positive for controlled substances, deliberately avoided drug screens so that he would not test positive for controlled substances and failed to participate in parenting and adult life skills classes as required. Most importantly, petitioner continually denied that he had a substance abuse problem or required treatment. This Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Alarmingly, petitioner admitted that he tested positive for controlled substances at the adjudicatory phase of the proceeding, only to double-back on that position as the proceedings continued. Petitioner denied that he needed any assistance with his substance abuse yet continued to test positive for controlled substances or otherwise avoided submitting to drug screens. Because petitioner failed to acknowledge this condition of neglect and abuse, any additional time to improve would have been an exercise in futility.

Petitioner also argues that the circuit court erred in terminating his parental rights instead of imposing a less-restrictive dispositional alternative, such as termination of his custodial rights only. He asserts that there was no evidence presented that it was necessary for the children's welfare to terminate his parental rights. Petitioner again argues that the mother continued to participate in an improvement period, and, therefore, the circuit court did not need to achieve permanency for the children at the time of the dispositional hearing. We find petitioner is entitled to no relief.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d)(e) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical,

mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[ren].

As set forth above, petitioner failed to follow through with a reasonable family case plan. Moreover, petitioner's failure to acknowledge his substance abuse rendered that problem untreatable. Therefore, the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Petitioner, by his own admission, neglected his children due to his use of prescription medications that were not prescribed to him. Yet, his substance abuse continues unabated. The circuit court's termination of petitioner's parental rights was necessary to prevent petitioner's further abuse or neglect of his children, and, therefore, termination of his rights was necessary for their welfare.

Finally,

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court was well within its discretion to terminate petitioner's parental rights based on the findings below. In response to petitioner's argument regarding the mother continuing to participate in the proceedings, we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, even if one parent is "found to be a fit and proper caretaker for [the] child[,] it does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. As discussed, petitioner's failure to acknowledge the conditions of abuse and neglect left no hope that the conditions would improve. Moreover, while the mother continues in her improvement period, her success is entirely speculative and may not be a determinative factor for petitioner's disposition. The circuit court did not err in terminating petitioner's parental rights, even while the mother currently retains her rights at least pending the successful completion of her improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 6, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment