**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **P.M.**

**No. 24-215** (Harrison County CC-17-2022-JA-129)

## MEMORANDUM DECISION

Petitioner Father J.S.[1] appeals the Circuit Court of Harrison County's March 19, 2024, order terminating his parental and custodial rights to P.M., arguing that termination was not necessary for the child's welfare.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2022, the DHS filed a petition[3] alleging that the petitioner, who was incarcerated, neglected P.M. by failing to provide the child with certain necessities and had also abandoned the child. According to the DHS, as a result of the petitioner's incarceration, the child was subjected to the mother's substance abuse and recent overdose. When law enforcement responded to the overdose, the child, then three years old, "was outside naked" for an unknown duration. The mother explained that the petitioner had never been involved in the child's life and never provided him with any support.

---

[1] The petitioner appears by counsel Jonathan Fittro. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Allison S. McClure appears as the child's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below involved another child who is not at issue in this appeal. Additionally, the DHS later amended the petition, but this amendment is not relevant to the resolution of the petitioner's appeal.

1

At an adjudicatory hearing in January 2023, the DHS introduced evidence related to the petitioner's criminal history and resulting incarceration. The petitioner's extensive criminal history included a conviction for burglary after he entered the mother's home through a downstairs window with a knife. The petitioner physically attacked the mother and "was on her when the police arrived." The mother displayed injuries from the attack, and the child was in the home when it occurred. The petitioner was also convicted of other criminal charges, including driving on a suspended or revoked license, driving under the influence, destruction of property, and shoplifting, and committed multiple parole violations. According to the record, the petitioner's projected release date from incarceration was March 14, 2029. Based on the evidence, the court found that the petitioner failed to protect the child from the mother's substance abuse and otherwise failed to provide him with necessities. Accordingly, the court adjudicated the petitioner of neglecting the child.

Following adjudication, the petitioner filed a motion for an improvement period. In late 2023, the petitioner was released from incarceration and attended a hearing at which he expressed a willingness to participate in services. The petitioner attended a few drug screens, but eventually stopped complying with this service. In January 2024, the petitioner was again incarcerated following his arrest for second offense driving under the influence, joyriding, and driving on a revoked license.

The matter then came on for a dispositional hearing in March 2024, at which time the DHS introduced evidence of the petitioner's recent arrest and testimony from a DHS worker concerning the petitioner's lack of participation. The court found that the petitioner had no relationship with the child, given that he was largely absent from the child's life due to repeated and extended periods of incarceration. The court further found that there was no reasonable likelihood that the petitioner could substantially correct the conditions in the near future, "given his long-standing history of voluntary, even violent, criminal behavior." The court highlighted the fact that the petitioner was given an "opportunity to . . . show that he had been rehabilitated and could be an active, appropriate adult in [P.M.]'s life," but he "[i]nstead . . . engaged in voluntary criminal behavior yet again." As such, the court denied the petitioner's motion for an improvement period. The court also found that this evidence established that termination of the petitioner's parental and custodial rights was necessary for the child's welfare. The court prohibited the petitioner from further contact with the child, as it was not appropriate and contrary to the child's best interests "given the lack of relationship . . . and . . . the violent criminal acts committed by" the petitioner against the mother while the child was present.[4] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner challenges only the circuit court's finding that termination of his parental and custodial rights was necessary for the child's welfare. Specifically, the petitioner claims that the child's return to the mother's custody rendered termination unnecessary. However, we have previously explained that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not

---

[4] The permanency plan for the child is to remain with the mother.

automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000).

Further, the petitioner asserts that the court's finding regarding the child's welfare was a "blanket" finding and lacked an evidentiary basis. We disagree. As set forth above, the court considered a number of factors in determining that termination was necessary for the child's welfare, chief among them the fact that the petitioner was convicted of burglary after breaking into the mother's home and attacking her in the child's presence. The court also considered the petitioner's extensive criminal history, his recent reincarceration after only a brief period of release, and the impact that these repeated and extended incarcerations had on the child's relationship with the petitioner. Contrary to the petitioner's arguments, these constitute compelling justifications for a finding that termination of parental and custodial rights is necessary for a child's welfare. Indeed, as we have explained, young children like P.M. "are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development" impacted by instability. *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). We have further explained that the "paramount need[s]" for a child are "permanency, security, stability and continuity." *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3, in part. Critically, we have stressed that "children are entitled to permanency to the greatest degree possible." *In re Isaiah A.*, 228 W. Va. 176, 182, 718 S.E.2d 775, 781 (2010) (citation omitted).

Here, the petitioner's arguments attempt to directly undermine the child's permanency and stability. He asserts, based on conjecture, that he may one day remedy these conditions and that further contact with the child may be beneficial. This speculation is simply insufficient to establish error, as we have held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting *In re R.J.M.*, 164 W. Va. at 496, 266 S.E.2d at 114, Syl. Pt. 2). Given that the petitioner admits that he cannot challenge the circuit court's finding that there was no reasonable likelihood that he could substantially correct the conditions of neglect and the finding as to the child's welfare necessitating termination was well supported, the court did not err in terminating the petitioner's parental and custodial rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental and custodial rights up these findings).

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 19, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV